IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

                        CASE NO.: 1:23-CR-00056-JKB

vs.

BRANDON CLINT RUSSELL,

_____/

**BRANDON RUSSELL'S RESPONSE IN OPPOSITION TO GOVERNMENT'S
MOTION FOR PROTECTIVE ORDER REGARDING UNDERCOVER WITNESSES**

    Brandon Russell, through undersigned counsel, responds in opposition to the government's Motion for Protective Order Regarding Undercover Witnesses (ECF No. 102) as follows:

    At the outset, the government is requesting far more than a protective order in this case. The government is essentially trying to dictate how the defense presents its case to the jury. The government has filed a motion for a protective order requesting extreme and extraordinary measures to keep the identity of three government witnesses a secret (ECF No. 102). This request is made based upon alleged security concerns, as well as to "preserve the ability of the witnesses to participate in undercover capacities in other investigations." *Id.*  While witness safety is something the Court should always consider, the ability of the witnesses to continue to assist the government in unrelated investigations is not.  Plainly put, the government's interest in utilizing these witnesses again at some point in the future is in no way a justification to infringe upon Mr. Russell's right to complete discovery under the Fifth Amendment, and to fully confront the witnesses testifying against him at trial under the Sixth Amendment.

    Under the Fifth Amendment, *Brady v. Maryland* and its progeny, the defense has:

1

1) The right to know the evidence being used against Mr. Russell. Without the witnesses' identifications, this rule is violated;

2) The right to have impeachment information (i.e., the right to know whether these secret witnesses have engaged in dishonest conduct or other misconduct, including but not limited to criminal misconduct, Internal Affairs files, etc.) and;

3) the right to have exculpatory evidence. Without knowing the identification of these witnesses, the defense cannot engage in an investigation to find exculpatory evidence. This is different from the government simply saying there is no exculpatory evidence.

## RIGHT TO CONFRONT WITNESSES

Brandon Russell challenges the government's attempt to allow three government witnesses to testify under pseudonyms and without revealing their names, home and work addresses, or dates and places of birth. To permit the government to do so runs afoul of the Sixth Amendment right to confrontation. Without this critical information, the defense is not able to conduct independent research about the witnesses' veracity and credibility. "In general, the Confrontation Clause guarantees a defendant the right to question an adverse witness about identifying information, including his full name and address.), *United States v. Ramos-Cruz*, 667 F.3d 487, 500 (4th Cir. 2012) (relying on *Smith v. Illinois,* 390 U.S. 129, 131, (1968) (hold that "the very starting point in exposing falsehood and bringing out the truth through cross-examination must necessarily be to ask the witness who he is and where he lives. The witness' name and address open countless avenues of in-court examination and out-of-court investigation. *To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself.*) (emphasis added)

Admittedly, the Fourth Circuit has recognized that this right is not absolute, however, and "a trial court may limit cross-examination if the information sought could endanger the witness." *Chavis v. North Carolina,* 637 F.2d 213, 226 (4th Cir.1980)." However, [w]hen the government seeks to withhold a witness's true name, address, or place of employment, it bears the burden of demonstrating that 'the threat to the witness [is] **actual** and not a result of conjecture.'" (Emphasis added) (quoting *United States v. Palermo,* 410 F.2d 468, 472 (7th Cir.1969)). Furthermore, even if the government makes a showing of an actual threat, the district court still has discretion to review relevant information and determine whether disclosure of the witness's identifying information is necessary to allow effective cross-examination. *Id.*  In Mr. Russell's case, the government's blanket assertion of potential danger to the three witnesses at issue is speculative at best.  The government's arguments are based largely on conjecture.  This conjecture is insufficient to deprive Mr. Russell of his constitutional right to confront the witnesses against him.

**LESS RESTRICTIVE ALTERNATIVES**

Should the Court find that the Government has demonstrated an **actual** threat to their witnesses, there are less restrictive means of assuring their safety, and limiting the damage to Mr. Russell's defense and the infringement upon his Sixth Amendment rights.  The Court can issue a protective order, wherein the true identities of the witnesses are to be kept confidential by the defense team.  The attorneys and support staff tasked with representing Mr. Russell are willing to sign and abide by a confidentiality agreement and/or protective order which would prohibit the disclosure of the witness' information to anyone outside of the defense team.  Under this scenario, it is hard to imagine that the disclosure of this information to the defense team would result in any risk of harm to the witnesses.  This would accomplish the government's desire to keep the public

from knowing the true identities of the witnesses, while still permitting the defense team to adequately investigate these individuals and be prepared to fully cross examine them at trial. The government has further expressed its intention to seek a court order partially sealing the courtroom when these witnesses testify. This is just another example of the available alternative means to accomplish the goal of witness safety without interfering with Mr. Russell's constitutional right to confront the witnesses against him.

### "LIGHT DISGUISE"

The government also requests that the witnesses be permitted to testify in "light disguise." This procedure presents several concerns. First, permitting the witnesses to appear in disguise and under a false name precludes the parties and the Court, during jury selection, from inquiring whether any members of the venire know any of the witnesses. The jurors need to be able to see the witnesses, and know their true identities, to be able to disclose such information during jury selection or during the trial. Furthermore, jurors need to be able to evaluate the credibility of these witnesses and cannot meaningfully do so when witnesses testify in disguise. Allowing the witnesses to testify in disguise greatly impairs the ability of the jury and the attorneys to judge the demeanor of the witnesses in determining their credibility.

### "GOOD CAUSE" AND THE RIGHT TO A PUBLIC TRIAL

The government's proposed protective order fails not only constitutional scrutiny but also the "good cause" bar required by Rule 16. Pursuant to Rule 16, the Court may restrict use of discovery through a protective order only if the movant makes a "good cause" showing. Fed. R. Crim. P. R. 16(d)(1). "[G]ood cause is established on a showing that disclosure will work a ***clearly defined and serious injury . . . .*** The injury must be shown with specificity. Broad allegations of

harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." *U.S. v. Wecht*, 484 F.3d 194, 211 (2007) (emphasis added). [W]here a party has done little "[a]part from generally noting the existence of [purportedly] confidential third party information . . . [the party] has not asserted, much less shown, specific harm or prejudice that it expects will arise from disclosure of any particular documents produced in discovery." *Foltz v. State Farm Mut. Auto. Ins. Co.,* 331 F.3d 1122, 1311 (9th Cir. 2003); s*ee*, *e.g.*, *Virginia Dep't of State Police v. Washington Post*, 386 F.3d 567, 579 (4th Cir. 2004). Here, this analysis concerns not run-of-the-mill discovery in a civil case, but potential *Brady* material in a criminal case.

To begin, heightened scrutiny above and beyond the "good cause" standard in a typical civil case applies here because the public has a stronger interest in criminal prosecutions than in civil actions. This interest derives from the Constitution itself. *Compare* U.S. Const. Amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and *public* trial . . . ."). *Accord United States v. Wecht*, 484 F.3d 194, 210 (3d Cir. 2007) ("[T]he process by which the government investigates and prosecutes its citizens is an important matter of public concern."); *Morgan v. Foretich*, 521 A.2d 248, 252 (D.C. 1987) ("We hold, however, that the presumption of openness and the standard for closure that apply in criminal cases, where the constitutional threshold for closure is highest, do not apply to the evidentiary phase of a civil . . . hearing . . . ."). Accordingly, "[t]he *constitutional* right of access" has a broader application in the criminal context. *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1310 (11th Cir. 2001) (emphasis added). And since the right to disseminate is rooted in the constitutional right of access and openness, *see id.*, any limitation on these rights must pass First Amendment scrutiny. *See e.g.*, *Waller v. Georgia, 467* U.S. 39, 45 (1984) ("[T]he right to an open trial may give way in certain cases to other rights or interests, such as … the government's interest in inhibiting

5

disclosure of sensitive information[,]" but "[s]uch circumstances will be rare, however, and the balance of interests must be struck with special care.").

## FISA IMPLICATIONS

The government's request to keep the identity of their witnesses a secret, in conjunction with other information now known to the defense, strongly suggests that there are also Foreign Intelligence Surveillance Act ("FISA") implications at play.

Given this new information, the defense will be seeking notice from the government as to whether it intends to use evidence obtained under or derived from surveillance authorized by the FISA Amendments Act of 2008 (hereinafter "FAA"). At present, it is impossible for Mr. Russell to know whether communications related to the instant prosecution were intercepted pursuant to the FAA—despite evidence suggesting it is very likely. By statute, and as a matter of due process, Mr. Russell is entitled to notice of the government's intent to use FAA evidence against him in the present case. *See* 50 U.S.C. §§ 1881e(a), 1806(c); *Clapper v. Amnesty International USA*, 133 S. Ct. 1138, 1142 (2013).

Based upon the government's desire to keep its witnesses secret, the defense now believes that FISA has been implicated.  Pro Publica published an article on February 13, 2024[1] which, along with the government's newly disclosed desire for secrecy, strongly suggest that Mr. Russell has been the subject of FISA warrants which have not yet been disclosed to the defense.  To that end, Mr. Russell will be filing a motion to compel the government to provide him with the

---

[1] FBI reveals controversial spy tool foiled terror plot as Congress debates overhaul - POLITICO

existence of such information, as well as its intent to use information obtained or derived pursuant to the FSA Amendments Act (FAA), 50 U.S.C. § 1881a.

## CONCLUSION

For the above reasons, set forth above, the government's requested relief will result in a violation of Mr. Russell's constitutional rights and should therefore be denied.

Dated: June 3rd 2024						Respectfully submitted,

**/s/ Ian J. Goldstein**
Ian J. Goldstein (Admitted *pro hac vice*)
ian@iangoldsteinlaw.com
LAW OFFICES OF IAN GOLDSTEIN P.A.
330 Clematis Street, Suite 209
West Palm Beach, FL 33401
Tel: (561) 600-0950

**/s/Kobie A. Flowers**
Kobie A. Flowers (Bar No. 16511)
kflowers@browngold.com
Brown, Goldstein & Levy, LLP
120 E. Baltimore Street, Suite 2500
Baltimore, Maryland 21202
Tel: (410) 962-1030

Counsel for Brandon Russell

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically filed via CM/ECF which will serve all parties of record on this 3rd day of June, 2024.

Respectfully submitted,

**/s/ Ian J. Goldstein**

Ian J. Goldstein (Admitted *pro hac vice*)
ian@iangoldsteinlaw.com
LAW OFFICES OF IAN GOLDSTEIN P.A.
330 Clematis Street, Suite 209
West Palm Beach, FL 33401
Tel: (561) 600-0950