IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | **CRIMINAL NO. JKB-23-0056** |
| v.  : | |
| : | |
| **BRANDON CLINT RUSSELL,** : | |
| **Defendant.** : | |
| : | |
| : | |

...oOo...

## GOVERNMENT'S MOTION FOR PROTECTIVE ORDER PERMITTING PARTIAL CLOSURE OF COURTROOM

The United States of America, by its undersigned attorneys, respectfully requests that the Court enter an order directing that the courtroom be partially closed during the testimony of three covert witnesses at the trial of this matter. In support of this motion, the government states as follows:

As already set forth in the government's Motion for Protective Order Regarding Undercover Witnesses (ECF 102) and its Reply to the defendant's Opposition (ECF 108), there are very real and serious threats to the safety of the three covert witnesses, and their ability to continue to work in a covert capacity in other ongoing and future investigations if their true identities and physical appearances were to be disclosed in this case.[1] In addition to the protective measures already requested, the government further requests that the Court order that 1) when each of the three covert witnesses testify, only the Court, essential personnel, the jury, the defendant and his counsel, and the government's trial team shall be present in the courtroom; and

---

[1] All of the grounds set forth in ECF 102 and 108, including the sealed portions of ECF 102, are re-alleged and incorporated herein by reference in support of this motion.

1

2) that the government provide a contemporaneous audio broadcast of the courtroom proceeding for the public in a separate room.[2]

## ARGUMENT

The most drastic step used to protect the identity of the covert witnesses would be the closing of the court proceedings to the public during trial. The government is not seeking to close the proceedings entirely, but rather, is seeking the reasonable measure of partial closure of the courtroom in order to prevent the public disclosure of the true identities and physical descriptions of the three covert witnesses. Under the circumstances of this case, partial closure of the proceedings is supported by the law and is an appropriate balance of the defendant's rights to a public trial and confrontation, and the interests of the FBI in not jeopardizing the witnesses' continuing covert work or safety.

### A. Right to a Public Trial

The Sixth Amendment guarantees the right to a public trial. *See* U.S. Const. Amend. VI. The right to a public trial assures the defendant receives a fair trial, promotes the integrity of the fact-finding process, preserves public confidence in the criminal justice system, and affords the community an outlet to address crime. *See Waller v. Georgia*, 467 U.S. 39, 46 (1984). The Supreme Court has recognized, however, that the right to a public trial is not absolute and under certain circumstances, trial courts may implement reasonable trial procedures to protect other compelling interests, without violating the Sixth Amendment. *Id*. at 45. In *Waller*, the Supreme Court discussed four factors for a court to determine if closing proceedings are justified:

> [T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.

---

[2] Defense counsel has advised the government that the defendant objects to this motion.

*Waller,* 467 U.S. at 48. The Fourth Circuit has adopted a modified *Waller* test to use when evaluating partial courtroom closures (when some but not all spectators are barred from the proceedings), the only modification being that "overriding interest" is replaced by requiring a showing of a "substantial reason." *United States v. Barronette*, 46 F. 4th 177, 193 (4th Cir. 2022).

Here, instead of seeking a full or partial closure of the proceedings that bars spectators from live proceedings throughout the trial, the government is requesting to partially close the proceedings only when the three witnesses testify, while providing spectators an alternative means of attending that portion of the trial. Although the government is not seeking to close the proceedings entirely, the modified *Waller* analysis is instructive.

**1. Substantial Reason**

The government's interest at stake in this case is in protecting the safety and effectiveness of the three covert witnesses. As the Second Circuit has recognized, "[t]he state interest in maintaining the continued effectiveness of an undercover officer is an extremely substantial interest, and . . . this interest would be seriously prejudiced by requiring the officer to testify in an open courtroom." *Ayala v. Speckard*, 131 F.3d 62, 72 (2d Cir. 1997); *see also Rodriguez v. Miller*, 537 F.3d 102, 110 (2d Cir. 2008) ("It is clear that the State has an 'overriding interest' in protecting the identity of its undercover officers."). In *Ayala*, the Second Circuit further explained:

> There is no requirement that the prosecution must prove that particular individuals likely to attend the trial will disclose the officer's identity. Of course, the defendant himself has an opportunity to observe the officer (a second opportunity, if the defendant is guilty), and might communicate a description of the officer to others, particularly if the defendant is at liberty pending trial. The defendant's right of presence at his trial requires accepting that risk, but the right to a public trial does not require the further risk that the officer's identity will become known through observation by members of the public who might enter the courtroom and see the officer testifying.

*Ayala*, 131 F.3d at 72. Similarly, protecting the safety of witnesses generally is also considered to be a substantial reason in this context. *See United States v. Simmons,* 797 F.3d 409, 414 (6th Cir. 2015) ("In particular, courts consistently hold that ensuring witness safety and preventing intimidation constitutes a substantial reason to justify the partial closure of the courtroom").

The facts of this case support finding that the government has a substantial reason for the proposed partial closure, as set forth fully in ECF 102 and 108.

### 2. No Broader Than Necessary

The proposed partial closure in no broader than necessary and will provide a means by which the public may hear live testimony. Requiring nonessential personnel to listen to testimony from a separate room where they cannot physically see the three witnesses is the least restrictive measure that assures the safety of the witnesses. Indeed, more restrictive measures, such as closing the proceedings to spectators during the testimony of witnesses without providing a separate room where the public could hear live testimony, have been approved in other cases where the public could only access a transcript after the testimony. *See Ayala*, 131 F.3d at 72 (approving partial closure of court for testimony of undercover officer where the transcript of testimony was available to the public and press); *United States v. Hernandez*, No. S1 12 Cr. 809 (PKC), 2013Wl3936185 at *2 (S.D.N.Y., Jul. 29, 2013) (approving closure of court to public during testimony of undercover officer where government agreed to make the transcript of the testimony available at the end of the trial day). Here, the government's proposal allows the public to hear live testimony, in addition to having access to the public transcript. The proposal is also limited as it only applies to the three witnesses. *See Carson v. Fischer*, 421 F.3d 83, 90 (2nd Cir. 2005) (when evaluating whether a partial court closure was no broader than necessary, noting that "it is important that the closure occurred only during a single witness testimony").

4

Partial closure is especially appropriate in this case because the defendant never met the three witnesses in person, nor did he see any video or photograph depicting the covert witnesses, except for one image. And in that one image, the covert witness' face and head are concealed by a mask, sunglasses and a hat. ECF 108 at 3, fn. 1. There is no legitimate public interest in the witnesses' physical appearances in this case. The content of the witnesses' testimony is what is relevant, not their physical appearances. *See United States v. Mohamud*, No. 3:10-CR-00475-KI, Doc. 341 (D.Or., Dec. 19, 2012) (attached as Exhibit 1) (district court authorized the use of a separate room for CCTV broadcast of undercover agents' testimony in a manner that prevented the public from viewing the witness where the evidence included video and photographs of the testifying undercover agents).

3. **Reasonable Alternatives**

In evaluating the third prong under *Waller*, "the trial court must consider reasonable alternatives to closing the proceeding [.]" 467 U.S. at 48. Here, the alternatives open to the Court do not provide the same balance of the competing interests.

For example, the public could remain in the courtroom while the witnesses testified behind a screen or barrier. *See United States v. Lucas* 932 F.2d 1210 (8th Cir. 1991) (use of screen at trial to shield testimony of undercover police officer from public permitted). A screen would have essentially the same effect as the government's proposed option—the spectators would be able to hear, but not see the testifying witness. This option, however, is not as practical as a partial closure and raises other concerns. Any screen or barrier would have to allow for the Court, the jury and the defendant to see the witnesses. The jury has to be able to evaluate the witnesses and part of the defendant's right to confront the witnesses against him includes the right to see those witnesses. The location of the jury box, witness chair, counsel table, and bench makes such a screen difficult

5

without making major changes to the layout of the courtroom. Such changes to layout could impair the ability of the Court Security Officers to do their job in the courtroom, or draw undue attention to the witnesses by the jury, making the jury believe that the witnesses are "special" witnesses deserving of extra credibility. There is also no guarantee that a spectator might not have an unanticipated viewing angle that would accidentally allow the spectator to see the witnesses.

Likewise, a more extensive disguise is not an effective balancing of the interests in this case. Although the public would be able to both see the witnesses and hear their testimony, the effect of an extensive disguise could be prejudicial to the defendant, as it could hinder the ability of the jury to evaluate the witnesses and draw undue attention to the "unique nature" of their testimony. Further, such an extensive disguise would not fully protect the witnesses' physical description from the public, as spectators might still see the physical dimensions of the witnesses.

**4. Adequate Findings**

The partial closure requested by the government to protect the security and safety of the three witnesses, and to protect the integrity of other covert investigations, would not violate the defendant's Sixth Amendment rights. The government is not seeking the drastic measure of closing the court during the testimony of the witnesses, but seeks only to protect from disclosure their true identities. To accomplish that goal the government has proposed a reasonable procedure, short of closing the proceedings, that will not interfere with the defendant's Sixth Amendment rights and will allow the public to hear the testimony of the covert witnesses in real time.

Balanced against these concerns, the contemporaneous audio broadcast of the proceedings to the public in a separate room provides the public with access to the trial proceeding, except for the ability to view the covert witnesses' physical appearances. As noted above and in ECF 102, courts have approved the full closure of courts for testimony of undercover agents and have

approved use of screens which prevent the public from viewing the testifying witness. The government's request is consistent with those cases.

### B. Right to Confront Witnesses

The government's proposed partial closure also complies with the confrontation clause. The confrontation clause of the Sixth Amendment provides the defendant in a criminal trial has the right to confront and cross-examine the government's witnesses who testify against the defendant. *See* U.S. Cont. Amend. VI; *Maryland v. Craig*, 497 U.S. 836, 846 (1990); *Smith v. Illinois*, 390 U.S. 129 (1968). The elements of confrontation - physical presence, oath, cross examination, and observation of demeanor by the trier of fact - serves the purposes of the Confrontation Clause by ensuring that evidence admitted against an accused is reliable and subject to rigorous adversarial testing that is the norm of Anglo-American criminal proceedings. *Maryland v. Craig,* 497 U.S. at 846. The use of a separate room for spectators to hear testimony complies with the confrontation clause because the defendant will remain in the courtroom to both hear and see the covert witnesses' testimony against him and he will have an unobstructed view.

## CONCLUSION

For all the foregoing reasons, the government respectfully requests that the Court grant the government's motion for partial closure of the courtroom in order to ensure the security and safety of the witnesses and other covert investigations. As explained above, the partial closure would not violate the defendant's right to a public trial or his right to confront the witnesses against him and is constitutes a reasonable balancing of the defendant's rights and the government's interest in protecting the covert witnesses' identities.

Accordingly, the government respectfully requests that the Court make the following findings based on the law and the information presented in this motion:

1) The partial closure of the courtroom is a reasonable alternative measure that is necessary to protect from disclosure the true identities of the three covert witnesses at trial;

2) Disclosure of the three covert witnesses' identities would jeopardize future and ongoing covert investigations in which they are currently or will be involved; and

3) The three covert witnesses have a real and substantial risk of danger to themselves and their families if their true identities are disclosed.

A proposed Order is attached for the Court's consideration.

                                              Respectfully submitted,

                                              Erek L. Barron
                                              United States Attorney

By:                          
                                              Kathleen O. Gavin
                                              Michael F. Aubin
                                              Assistant United States Attorneys
                                              36 South Charles Street
                                              Fourth Floor
                                              Baltimore, Maryland 21201
                                              (410) 209-4800

                                              *FILED VIA ECF/CM*