IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

vs.                                                        CASE NO.: 1:23-CR-00056-JKB

BRANDON CLINT RUSSELL,

_____/

**REPLY IN SUPPORT OF BRANDON RUSSELL'S MOTION TO COMPEL THE GOVERNMENT TO PROVIDE NOTICE OF ITS INTENT TO USE OR DISCLOSE INFORMATION OBTAINED OR DERIVED FROM SURVEILLANCE CONDUCTED PURSUANT TO SECTION 702 OF THE FOREIGN INTELLIGENCE SURVEILLANCE ACT**

**Introduction**

Under the Constitution and the Foreign Intelligence Surveillance Act ("FISA"), the government must notify the accused when it intends to use information against him that was "obtained or derived from" Section 702 surveillance. The government's conclusory response to Mr. Russell's motion to compel notice only underscores why the Court's intervention is necessary and notice is required here. Critically, the government does not dispute that Mr. Russell was subject to warrantless surveillance under Section 702. FBI Director Christopher Wray and a senior FBI official appear to have publicly acknowledged as much, claiming that Section 702 was instrumental in thwarting an alleged plot that bears every hallmark of this prosecution. But the government nonetheless maintains that it can withhold notice, simply asserting that, in its view, "a FISA notice is not required." Resp. at 2. The government's position here is inconsistent with the public record, with FISA, and with due process.

The government's own public statements show that its evidence in this prosecution was "derived from" its Section 702 queries of Mr. Russell's communications. 50 U.S.C. § 1806(c). The

1

FBI has disclosed that it learned of the alleged plot and was able to intervene only *because of* the warrantless searches it conducted. Mot. to Compel, ECF No. 107 at 10–11. That description plainly triggers the statute's notice requirement. To the extent the government secretly has taken or will take the position—notwithstanding these public statements—that its evidence is not "derived from" surveillance of Mr. Russell, this claim requires the Court's probing review and, ultimately, adversarial litigation. Because notice of surveillance facilitates adversarial litigation over suppression, notice is required if—at this preliminary stage—some of the government's evidence appears to be derived from the surveillance of Mr. Russell. After the government provides notice, the Court will have the opportunity to fully and finally determine which pieces of evidence are "derived from" any illegal surveillance at the suppression stage, consistent with the Fourth Amendment and FISA. *See* 50 U.S.C. §§ 1806(e), (g).

But even if FISA itself did not require notice here, due process would. Due process does not allow the Court to simply rely on the government's say-so when it comes to surveillance and the right to seek suppression. Where, as here, it is plain that the government surveilled the accused in the course of its investigation, the question of whether particular information is "derived from" that surveillance must be fully and finally resolved through an adversarial proceeding, *not* ex parte—as the Supreme Court held in *Alderman v. United States*, 394 U.S. 165, 180–185 (1969). Adversarial litigation is even more important here because the government has a history of interpreting the meaning of "information . . . derived from" Section 702 surveillance far too narrowly, in order to avoid providing notice to the accused and to insulate this controversial surveillance power from judicial review. *See* Mot. to Compel at 10–11.

For the reasons explained below, the Court should grant Mr. Russell's motion to compel notice under FISA and as a matter of due process. Notice, in this context, is typically a barebones,

boilerplate statement that acknowledges the surveillance of the accused.[1] At a minimum, regardless of how the Court rules on the notice issue, it should permit Mr. Russell to file a motion to suppress under the Fourth Amendment and as contemplated by 50 U.S.C. § 1806(e) and 18 U.S.C. § 3504. What the government *cannot* do under *Alderman* and due process is attempt to preempt Mr. Russell's ability to seek suppression by deciding unilaterally, or by litigating, ex parte, the complex legal and factual questions of whether its evidence was derived from the surveillance of Mr. Russell.

In disclosures to Politico and in FBI Director Wray's speech, the FBI claimed that Section 702 surveillance was essential to detecting and stopping an alleged imminent plot. *Id.* at 9–10. The details disclosed by the FBI map onto allegations in only one public criminal prosecution since January 2023: this one. It would make a mockery of the notice requirement to allow the government to publicly proclaim that Section 702 surveillance was integral to this case, while simultaneously arguing to this Court that its evidence is not "derived from" Section 702 surveillance.

## I.  Mr. Russell is entitled to notice of the government's Section 702 surveillance.

FISA, due process, and the federal rules each independently entitle Mr. Russell to notice of the government's use of Section 702 surveillance in this case.[2]

### A.  FISA requires notice because the government's evidence is derived from surveillance of Mr. Russell's communications.

The government does not deny that Mr. Russell was subject to warrantless surveillance under Section 702. Nor does it deny that FBI agents queried its Section 702 databases to access

---

[1] *See, e.g.*, *United States v. Khan*, No. 12-cr-659, ECF No. 59 (D. Or. Apr. 3, 2014) (one-paragraph boilerplate notice of Section 702 surveillance).

[2] The government responded to this motion by stating that it "is aware of *all* of its disclosure obligations" and that it "has and will continue to fully abide by all of those obligations." Resp. at 2 (emphasis in original).

Mr. Russell's private communications, just as they have queried those databases *millions* of times to search for Americans' communications without a warrant. And although the government characterizes Mr. Russell's argument as "pure speculation," Resp. at 1, it notably does not deny that this case is the one described by the senior FBI official in the Politico Article and by FBI Director Wray in his speech. *See id*. at 1–2; *see also* Resp., ECF No. 108 at 5 (similar).

To the extent the government is withholding notice under Section 1806(c) based on a secret, unilateral belief that its evidence is not "derived from" the surveillance—for example, because it claims it would have inevitably discovered the same information or that the queries were too "attenuated"—that belief is not determinative. As courts have long held, evidence is "derived" from surveillance whenever it is the direct or indirect product of that surveillance, including where there are intervening investigative steps. *See Wong Sun v. United States*, 371 U.S. 471, 484–89 (1963) (finding taint where "[t]he prosecutor candidly told the trial court that 'we wouldn't have found those drugs except that Mr. Toy helped us to'"); *United States v. Seidman*, 156 F.3d 542, 548 (4th Cir. 1998).

Moreover, even if the government ultimately argues that an exception to the "fruit of the poisonous tree" doctrine applies, that question can only be fully and fairly resolved through an adversarial proceeding. *See* Section I.B, *infra*. That is because *notice* is distinct from *suppression*. Notice is a preliminary step, which facilitates adversarial litigation over the lawfulness of surveillance and, eventually, over suppression. Indeed, as the Fourth Circuit has recognized, the question of whether evidence is factually "derived" from a particular source may often be distinct from the question of whether it is legally "admissible" at the suppression stage. *See United States*

---

As a result, this brief addresses the government's obligations under the federal rules alongside FISA and due process.

4

*v. Najjar*, 300 F.3d 466, 477 (4th Cir. 2002). Thus, insofar as the government's withholding of notice under Section 1806(c) is based on its conflation of the "derived" analysis with the "admissibility" analysis, *Najjar* counsels against such an approach. In other words, the government cannot withhold notice because, in its view, an exception to the fruit-of-the-poisonous-tree doctrine applies and, in its view, Mr. Russell is unlikely to prevail on a motion to suppress.

On the facts here, the government cannot thwart suppression litigation by secretly interpreting both the law and the facts in its own favor to withhold notice. At this preliminary stage, because at least some of the government's evidence is plausibly "derived from" the surveillance, the Court should order notice so that the "derived" question can be fully and fairly litigated at the suppression stage as contemplated by FISA. 50 U.S.C. §§ 1806(e), (g); *see also Seidman*, 156 F.3d at 548 ("[A] finding with respect to attenuation . . . can only be made after consideration of all the circumstances of the case.").

### B.  Due process also compels notice in this case.

Notice of the government's reliance on Section 702 surveillance is essential to Mr. Russell's due process rights. Without notice, it will be difficult for Mr. Russell to bring an informed motion to suppress—to test whether the government's evidence was lawfully obtained or whether it was acquired in violation of the Fourth Amendment. Courts confronted this question with the advent of wiretapping decades ago and concluded that the government could not criminally prosecute an individual while keeping the sources of its evidence secret. Instead, the accused is entitled to know how the government monitored their communications, and then to test—in an adversarial proceeding—whether the government's evidence is derived from that surveillance. *See, e.g.*, *Alderman*, 394 U.S. at 180–185; *United States v. U.S. Dist. Court (Keith)*, 407 U.S. 297, 324 (1972) (ordering disclosure of wiretaps in a national security case to facilitate adversarial litigation under *Alderman*).

Under the Due Process Clause, the accused must have a meaningful opportunity to pursue suppression of illegally acquired evidence. *See, e.g.*, *Murray v. United States*, 487 U.S. 533, 536–38 (1988) (describing right to seek suppression of evidence "derived" from an unlawful search); *Alderman*, 394 U.S. at 180–185; *United States v. Moalin*, 973 F.3d 977, 999–1001 (9th Cir. 2020); *see also United States v. Gamez-Orduno*, 235 F.3d 453, 461 (9th Cir. 2000) ("The suppression of material evidence helpful to the accused, whether at trial or on a motion to suppress, violates due process if there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different."); *Smith v. Black*, 904 F.2d 950, 965–66 (5th Cir. 1990), *vacated on other grounds*, 503 U.S. 930 (1992) (due process mandates the disclosure of information in the government's possession if nondisclosure would "affect[ ] the outcome of [a] suppression hearing").

Notice of surveillance is an obvious precondition to an informed motion to suppress. Indeed, courts have long found that notice is a constitutionally required element of surreptitious searches like wiretaps and sneak-and-peek entries. *See Berger v. New York*, 388 U.S. 41, 60 (1967) (finding wiretapping statute unconstitutional because, among other things, it had "no requirement for notice"); *Dalia v. United States*, 441 U.S. 238, 247–48 (1979) (Title III provides "a *constitutionally adequate* substitute for advance notice" by requiring notice after the surveillance is completed (emphasis added)); *United States v. Freitas*, 800 F.2d 1451, 1456 (9th Cir. 1986) (finding sneak-and-peek warrant constitutionally defective for its failure to provide notice within a reasonable time).

Due process also requires notice because it is "relevant and helpful" to the defense, even if the information is classified or subject to a government privilege. *See Roviaro v. United States*, 353 U.S. 53, 60–62 (1957); *United States v. Moussaoui*, 382 F.3d 453, 471–72 (4th Cir. 2004)

6

("[A] defendant becomes entitled to disclosure of classified information upon a showing that the information 'is relevant and helpful to the defense.'" (citation omitted)); *see also Jencks v. United States*, 353 U.S. 657, 671 (1957) (the government cannot invoke its privileges to "deprive the accused of anything which might be material to his defense"). In other words, due process entitles the accused to information—like the fact that Section 702 surveillance was used here—that is relevant and helpful to their arguments that evidence was obtained illegally and should be suppressed. *Roviaro*, 353 U.S. at 60–62; *see also United States v. Aref*, 533 F.3d 72, 80 (2d Cir. 2008) ("To be helpful or material to the defense, evidence need not rise to the level that would trigger the Government's obligation under *Brady v. Maryland*, 373 U.S. 83 (1963), to disclose exculpatory information."); *United States v. Amawi*, 695 F.3d 457, 471 (6th Cir. 2012) (same); *United States v. Mejia*, 448 F.3d 436, 456–57 (D.C. Cir. 2006) (same).

Thus, due process requires notice where, as here, the government has used a surveillance tool against an accused, and the accused makes a colorable claim that the government's evidence is derived from that surveillance. *See Alderman*, 394 U.S. at 180–185. It is plain that the government used Section 702 surveillance against Mr. Russell. Given the government's conduct in other cases, there is a strong basis to believe that it is withholding notice based on its unilateral determination that an exception to the fruit-of-the-poisonous-tree doctrine applies—*i.e.*, it believes that its evidence is not "derived from" Section 702 surveillance because, in its view, the evidence is too attenuated from Section 702, would inevitably have been discovered, or was subsequently reobtained through other means.[3] *See* Mot. to Compel at 10–11 (describing how the

---

[3] The government at times will use "parallel construction"—an opaque and controversial technique—to reobtain evidence that it originally acquired using methods that the government seeks to hide, including often from courts. *See* Human Rights Watch, *Dark Side: Secret Origins of Evidence in U.S. Criminal Cases* (Jan. 9, 2018), *available at* https://www.hrw.org/report/2018/01/09/dark-side/secret-originsevidence-us-criminal-cases.

7

Department of Justice withheld notice of Section 702 surveillance from defendants for five years based on an unjustifiably narrow definition of "derived from"). Allowing the government to dictate whether an exception to the fruit-of-the-poisonous-tree doctrine applies, and to thereby undermine Mr. Russell's ability to seek suppression, would violate due process. The government cannot avoid litigation over whether its evidence is tainted by substituting its judgment for this Court's.

The government's approach violates due process for two reasons. First, it flies in the face of *Alderman*. Applying due process principles, *Alderman* held that litigation over whether the government's evidence is "derived from" a particular search must be adversarial. 394 U.S. at 180–85. The essential insight of *Alderman* was that electronic surveillance yields vast amounts of private information, which agents rely on in myriad ways to further an investigation. Because of this complexity, only an adversarial process can ensure that courts accurately resolve the legal and factual questions of whether the government's evidence is the "fruit" of its surveillance. As the Court explained, "in our view the task is too complex, and the margin for error too great, to rely wholly on the in camera judgment of the trial court." *Id.* at 182 & n.14. Instead, to avoid leaving the trial court and the accused entirely reliant on the government's one-sided claims, adversarial proceedings are necessary "to provide the scrutiny which the Fourth Amendment exclusionary rule demands." *Id.* at 184; *see also Keith*, 407 U.S. at 324.

Second, it confuses the question of whether *notice is required* with whether the government *believes it would ultimately prevail on a motion to suppress*. The fruit-of-the-poisonous-tree doctrine controls whether suppression is ultimately warranted. *See Wong Sun*, 371 U.S. at 485–87. But the doctrine is not dispositive of the question of whether the accused is entitled to notice of surveillance in the first place. The government cannot unilaterally decide that because, in its view,

it is likely to prevail on a motion to suppress, the accused need never learn of surveillance at all. Instead, the two questions—whether the government is required to provide notice *and* whether suppression is warranted—must be treated as distinct from one another, *see Najjar*, 300 F.3d at 477, and each must be resolved following adversarial litigation.

The government's withholding of notice based on its own suppression analysis is also problematic for a practical reason: the government is routinely wrong about whether evidence should be suppressed. With the benefit of adversarial litigation, courts often reject the government's arguments about whether its evidence is derived from a given search or surveillance at the suppression stage. *See, e.g.*, *Wong Sun*, 371 U.S. at 485–87 (rejecting government's argument that its evidence was not tainted); *United States v. Gaines*, 668 F.3d 170, 176 (4th Cir. 2012) (rejecting government's argument that an exception to fruit-of-the-poisonous tree doctrine applied); *United States v. Lundin*, 817 F.3d 1151, 1161–62 (9th Cir. 2016) (same); *United States v. Johns*, 891 F.2d 243, 245–46 (9th Cir. 1989) (same); *United States v. Ramirez-Sandoval*, 872 F.2d 1392, 1396 (9th Cir. 1989) (same); *United States v. Williams*, 615 F.3d 657, 671 (6th Cir. 2010) (same); *see also Kolod v. United States*, 390 U.S. 136 (1968) (per curiam) (rejecting the government's unilateral determination that evidence was not derived from challenged surveillance and requiring adversarial proceedings). The government should not be permitted to short-circuit this Court's suppression analysis by relying on its own self-serving determination that an exception to the fruit-of-the-poisonous-tree doctrine justifies the lack of notice here.

### C. Rule 16 of the Federal Rules of Criminal Procedure also entitles Mr. Russell to notice.

The Federal Rules of Criminal Procedure also support Mr. Russell's request for notice. Under Rule 16(a)(1)(B), Mr. Russell is expressly entitled to discovery of his relevant recorded statements. Fed. R. Crim. P. 16(a)(1)(B). And under Rule 16(a)(1)(E), Mr. Russell is entitled to

items "obtained from or belong[ing] to" him, as well as information "material to preparing the defense." *Id.* 16(a)(1)(E). Because notice of the government's surveillance techniques is germane to Mr. Russell's ability to file an informed motion to suppress, this information is plainly "material" under Rule 16(a)(1)(E)(i). *See United States v. Soto-Zuniga*, 837 F.3d 992, 1000 (9th Cir. 2016) (holding that Rule 16(a)(1)(E) applies to discovery "related to the constitutionality of a search or seizure"); *see also United States v. Caro*, 597 F.3d 608, 620 (4th Cir. 2010) ("Rule 16 . . . is broader than *Brady*." (citation omitted)).

FISA, due process, and the federal rules each require notice of the Section 702 surveillance. Otherwise, the government's say-so—*see* Resp. at 2 ("[T]he government has determined that a FISA notice is not required")—becomes the law, insulating its surveillance from judicial review.

## II. The government should not be permitted to litigate notice and suppression issues on an ex parte basis.

In recent years, it has become increasingly clear that the government litigates surveillance and suppression issues on an ex parte basis, in an effort to thwart challenges to controversial surveillance techniques. Given the government's course of action in similar cases, counsel anticipate that the government may submit—or perhaps has already submitted—an ex parte filing to this Court, arguing in more detail why it believes that it is not required to provide notice of its Section 702 surveillance. *See, e.g.*, Motions to Seal, ECF Nos. 111, 112; Gov't CIPA Motion & CIPA Suppl. Brief, *United States v. Osseily*, No. 19-cr-00117 (C.D. Cal. July 8, 2020), ECF No. 150-2 (public versions of motion and brief originally filed ex parte).

For example, relying on the Classified Information Procedures Act ("CIPA"), the government has in the past argued—ex parte—that because it believes that an exception to the fruit-of-the-poisonous-tree doctrine applies, surveillance should not be disclosed to the defense. In 2009, for example, the Department of Justice Inspector General released a report describing how

the government had used CIPA's ex parte procedures to conceal surveillance in criminal cases. The report concerns warrantless "Stellar Wind" surveillance, the precursor to the Section 702 surveillance at issue in this case, which the government conducted for years without congressional or judicial approval. As the report explains, the government used CIPA to argue that surveillance materials were not discoverable, because the accused would not ultimately succeed in suppressing the government's evidence:

> The government argued that because the facts concerning the NSA's reporting would not aid the defense, the court need not explore the sources and methods used to acquire the information. The submissions also argued that the information collected by the NSA was not included in the government's FISA application, and therefore was too attenuated from the trial evidence to merit a review of the means by which the intelligence information was gathered. The government asserted that the "causal connection" between discovery of the derivative evidence and the alleged illegal search "may have become so attenuated as to dissipate the taint."

OIG Report 351, https://bit.ly/2PkLV35 (PDF p. 687). In other words, the government claimed that its evidence was not "tainted" by the warrantless surveillance, even though high-ranking officials compared the role of such surveillance in the government's investigations to "salt in soup"—"impossible to extract once added." *Id.* at 84 (PDF p. 420). Using CIPA, the government concealed Stellar Wind surveillance from every single criminal defendant who was subject to it—ensuring that neither the surveillance nor the government's "taint" claims were ever challenged.

The government continues to rely on ex parte filings in this way. In *United States v. Osseily*, No. 19-cr-117 (C.D. Cal.), the government argued that because its evidence was not—in its view—"derived from" surveillance conducted pursuant to FISA, that surveillance need not be disclosed to the defense. *See* Gov't Opp. 4, *Osseily*, (Feb. 7, 2020), ECF No. 93. Yet the government's claims about *why*, as a factual matter, its evidence was not derived from the FISA surveillance, were contained in its ex parte CIPA filings. *See id.* at 2, 10 (citing CIPA filings and stating, "[t]his analysis is based on classified facts the defendant cannot review"). By attempting

11

to litigate this issue on an ex parte basis, the government did precisely what *Alderman* and due process forbid.[4]

Mr. Russell remains in the dark about whether the government will submit—or whether it already has submitted—ex parte filings addressing these issues. But were the government to attempt to circumvent the adversarial process as it has in the past, the Court should ensure that defense counsel have the opportunity to fully and fairly address both the legal and factual arguments asserted by the government.

### III.  Mr. Russell intends to file a motion to suppress under FISA and the Fourth Amendment.

For the foregoing reasons, Mr. Russell respectfully requests that the Court grant his motion to compel and require the government to provide notice of its Section 702 surveillance of his communications, just as it has done in a handful of other criminal cases.[5] The FBI disclosures in the Politico Article, as confirmed in FBI Director Wray's speech, are enough to require notice under the authorities discussed above.

Should the government attempt to argue, ex parte, that Mr. Russell was indeed surveilled but is not entitled to notice—for example, because its evidence was not "derived from" the surveillance—the Court should reject those arguments and order notice so that the underlying legal and factual issues can be fully and fairly litigated at the suppression stage.

At a minimum, regardless of how the Court rules on the notice issue, it should permit Mr. Russell to file a motion for suppression of the fruits of Section 702 surveillance under the Fourth

---

[4] The government often claims that *Alderman* requires disclosure only where the government has already conceded that its surveillance was illegal. But the Supreme Court's holding did not turn on that fact, *see Alderman*, 394 U.S. at 183–85, and such a rule would be incoherent. An accused's right to seek suppression cannot depend on whether the government agrees that its search was unlawful.

[5] *See, e.g.*, *United States v. Khan*, No. 12-cr-659, ECF No. 59 (D. Or. Apr. 3, 2014) (one-paragraph boilerplate notice).

Amendment and as contemplated by 50 U.S.C. §§ 1806(e)–(g) and 18 U.S.C. § 3504. What the government cannot do under *Alderman* and due process is determinate unilaterally or use secret filings to argue that its evidence is untainted by its surveillance of Mr. Russell and thereby foreclose his ability to seek suppression.

FISA provides a detailed roadmap for how the next steps in the litigation would unfold. The statute permits defendants subject to surveillance to seek discovery and suppression of the resulting evidence. 50 U.S.C. §§ 1806(e)–(g). Moreover, as FISA itself contemplates and as the D.C. Circuit has recognized, even in the absence of formal notice, a defendant may seek to discover and suppress the relevant FISA information. *United States v. Belfield*, 692 F.2d 141, 146 (D.C. Cir. 1982) ("Alternatively, as in this case, even when the Government has purported not to be offering any evidence obtained or derived from the electronic surveillance, an accused may claim that he has been the victim of an illegal surveillance and seek discovery of the logs of the overhears to ensure that no fruits thereof are being used against him." (citing *Alderman*, 394 U.S. 165)); 50 U.S.C. §§ 1806(e), (f).

Mr. Russell's suppression motion, and any related request for discovery, would trigger the process contemplated by FISA. The Court would first assess the legality of the surveillance alongside any disclosure issues, as set forth in the statute. *See* 50 U.S.C. § 1806(f). Only then, and only if the Court finds the surveillance of Mr. Russell unlawful, would it determine—through an adversarial process—which specific pieces of evidence must be suppressed as a result, just as it would in any other suppression challenge. *See id.* § 1806(g); *Alderman*, 394 U.S. at 180–85.

## Conclusion

For the foregoing reasons, Mr. Russell respectfully requests that the Court grant the motion

to compel notice and set a briefing schedule for Mr. Russell's motion to suppress.

Dated: June 24, 2024                                    Respectfully submitted,

**/s/ Ian J. Goldstein**
Ian J. Goldstein (Admitted *pro hac vice*)

LAW OFFICES OF IAN GOLDSTEIN P.A.
330 Clematis Street, Suite 209
West Palm Beach, FL 33401
Tel: (561) 600-0950

**/s/ Kobie A. Flowers**
Kobie A. Flowers (Bar No. 16511)

Brown, Goldstein & Levy, LLP
120 E. Baltimore Street, Suite 2500
Baltimore, Maryland 21202
Tel: (410) 962-1030

Counsel for Brandon Russell

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically filed via CM/ECF which will serve all parties of record on this 24 day of June, 2024.

Respectfully submitted,

**/s/ Ian J. Goldstein**
Ian J. Goldstein (Admitted *pro hac vice*)

LAW OFFICES OF IAN GOLDSTEIN P.A.
330 Clematis Street, Suite 209
West Palm Beach, FL 33401
Tel: (561) 600-0950