IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| v. | * |
| BRANDON CLINT RUSSELL, | * Crim. No. 23-00056-JKB |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Defendant Brandon Clint Russell has been charged with conspiring to damage an energy facility in Maryland in violation of 18 U.S.C. § 1366(a).  (ECF No. 25.)  A jury trial is scheduled to commence in November 2024.  (ECF No. 122.)  In advance of that trial, the Government has filed several Motions pertaining to safeguarding the identity and security of three anticipated trial witnesses.  (ECF Nos. 101, 102, 111, 112, 113.)  Defendant has filed a Motion seeking to compel the Government to provide notice of surveillance pursuant to § 702 of the Foreign Intelligence Surveillance Act ("FISA"), 50 U.S.C. § 1881a.  (ECF No. 107.)  The Court held a hearing on these Motions on June 27, 2024.  For the reasons stated in open court and set forth below, the Court will grant in part and deny in part the Government's Motions, and deny Defendant's Motion without prejudice.

The Court will begin by analyzing in turn the Government's two Motions for Protective Order.  (ECF No. 102 & 113.)  The Court will then consider Defendant's Motion to Compel (ECF No. 107).  Finally, the Court will briefly consider three other miscellaneous Motions filed by the Government.  (ECF Nos. 101, 111, & 112.)

I.      **Motion for Protective Order Regarding Undercover Witnesses (ECF No. 102)**[1]

The Government seeks a protective order to conceal the identity of three prospective witnesses at trial, by allowing them, *inter alia*, to testify under pseudonyms and wear light disguises.[2] The Government argues that these protections are necessary to protect the witnesses' safety and to preserve their ability to participate in future undercover investigations. For the reasons stated in open court and for the reasons stated below, the Motion will be granted in part.

   A. *Legal Standard*

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." In general, the Clause requires that witnesses providing testimonial evidence against criminal defendants (1) testify in person, (2) under oath, (3) submit to cross-examination, and (4) in a manner that permits the jury to observe the witnesses and assess their credibility. *Maryland v. Craig*, 497 U.S. 836, 845–46 (1990). Confrontation Clause problems most often arise when the prosecution seeks to introduce evidence of statements from non-testifying witnesses, *see, e.g.*, *Smith v. Arizona*, ___ S. Ct. ___, 2024 WL 3074423 (2024), but the protections of the Confrontation Clause also come into play when a witness testifies at trial against a criminal defendant, but the trial court imposes limits on the scope of cross-examination, *Delaware v. Fensterer*, 474 U.S. 15, 19 (1985). In such instances, the constitutional question is whether

---

[1] This Motion is publicly viewable on the Court's docket, but contains redactions and does not have supporting exhibits or a proposed order. The Government has filed a sealed, unredacted version of the Motion, together with sealed exhibits and a proposed order, at ECF No. 99.

[2] The Government does not explain precisely what these light disguises would entail, but in its proposed order the Government refers, by way of example, to changes to a witness's "facial hair, hairstyle, or dress style." (ECCF No. 99 at 6.) It is the Court's expectation and understanding that it will not be apparent to the jury that the witnesses are in disguise, and that the disguises will not impair the jury's ability to evaluate the witness's facial expressions and general demeanor.

restrictions are so constraining as to "effectively emasculate the right of cross-examination itself." *Id.* (quotation and alteration omitted).

As relevant here, "[i]n general, the Confrontation Clause guarantees a defendant the right to question an adverse witness about identifying information, including his full name and address." *United States v. Ramos-Cruz*, 667 F.3d 487, 500 (4th Cir. 2012). However, "this right is not absolute," and "a trial court may limit cross-examination if the information sought could endanger the witness." *Id.* (quotation omitted). As the Fourth Circuit has explained:

> When the government seeks to withhold a witness's true name, address, or place of employment, it bears the burden of demonstrating that the threat to the witness is actual and not a result of conjecture. If the government makes a showing of an actual threat, the district court still has discretion to review relevant information and determine whether disclosure of the witness's identifying information is necessary to allow effective cross-examination.

*Id.* (alterations and citations omitted). Moreover, "[t]he appropriateness of using pseudonyms to protect witnesses does not depend on whether the threat to the witness comes directly from a defendant or from another source." *Id.* at 501 (alteration in original) (quotation omitted).

### B. Analysis

This is a close question. But the Court concludes that, under the particular circumstances of this case, certain protective measures are warranted and will not impermissibly encroach on Defendant's Confrontation Clause rights.

First, the Government's sealed exhibits present specific and credible evidence showing a substantial risk that the three witnesses' identities will be exposed if they are not permitted to testify under pseudonym and in light disguise. (ECF Nos. 99-1–99-5.) The specificity of the evidence in the sealed exhibits rises well beyond conjecture. Although the record does not indicate the presence of express threats of physical harm against the witnesses, the Court cannot ignore the broader context of this case. Russell is accused of being the founder and leader of a Neo-Nazi

organization with violent aspirations, and is accused of conspiring with his Co-Defendant to destroy electrical substations in the Baltimore area with the goal of causing a "cascading failure" of the region's electrical grid.  (*See generally* ECF No. 14.)  These circumstances indicate that Russell, and those sympathetic to him, present an unusually heightened threat of danger to societal institutions and witnesses seen as cooperating with those institutions.  Although this Court strongly disfavors witness anonymity, in this case such measures are necessary for the safety of the undercover witnesses.[3]

Second, in making its determination that the use of pseudonyms and light disguises is appropriate, the Court considers "the limited focus of the witnesses' testimony." *Ramos-Cruz*, 667 at 501.  The Government has proffered that the witnesses' testimony will consist solely of authenticating digital or audio recordings of conversations with Russell.  It is the Court's understanding from the Motions Hearing that the Government does not intend to elicit testimony from the witnesses about their own impressions of the conversation, nor does the Government intend to elicit testimony about other, uncorroborated conversations.  Moreover, Russell never met the witnesses in person, and never knew their real names (only their online aliases).  In such circumstances, the witnesses will be important not for their own testimony, but for their role as vehicles for introducing into evidence Russell's own words.  To be sure, a witness's credibility is

---

[3] The ultimate question of Russell's guilt beyond a reasonable doubt is of course committed to the sole determination of the jury, and Russell is entitled to the presumption of innocence.  The Court cannot and does not make any finding as to whether Russell is or is not guilty of the offense charged.  That said, courts regularly make preliminary determinations about a defendant's dangerousness for the purposes of deciding whether to detain or release the defendant pending trial.  *Cf.* Bail Reform Act, 18 U.S.C. 3142 (setting forth criteria for whether pretrial detention is appropriate, including, *inter alia*, the "nature and circumstances of the offense charged," "the weight of the evidence against the person," and the "history and characteristics of the person"); *Miranda v. Garland*, 34 F.4th 338, 363 (4th Cir. 2022) (observing that in some instances the Bail Reform Act places the burden on the defendant to demonstrate that he is *not* dangerous, and that this burden is constitutional).  If such determinations are appropriate when a defendant's fundamental liberty interest is at stake, it stands to reason that the Court can properly weigh a defendant's dangerousness when deciding what steps to take to protect witness safety.

always to some extent at issue when testifying. But in the circumstances of these witnesses, the jury will not be confronted with uncorroborated testimony whose truth rises or falls on the witnesses' credibility; rather the witnesses' role will be limited to authenticating already-existing recordings and documents that contain Russell's own words.[4]

The Court recognizes Defendant's understandable concern that, without knowing the identity of the witnesses, he is unable to conduct his own investigation into the witnesses' background for the purpose of finding impeachment material or other information by which to undermine the credibility of the witnesses' testimony. However, the Government has committed, both in its briefing and in open court at the Motions Hearing, to comply fully with its discovery obligations under federal law, including under *Brady*, *Giglio*, and the Jencks Act. (ECF No. 102 at 13–14; ECF No. 108 at 2.) *See United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1143 (10th Cir. 2014) ("[I]f the government provides defense counsel with sufficient background information on the anonymous witness . . . then withholding the witness's name or address does not necessarily deprive the defendant of an opportunity for effective cross-examination, which is the touchstone of a Confrontation Clause inquiry.")

Of course, questions of bias and partiality of a witness are "always relevant as discrediting the witness and affecting the weight of his testimony," and thus "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 316–17 (1974) (quotation omitted). But nothing in this ruling will prevent Defendant from inquiring on cross-examination at trial into whether the witnesses were paid for their testimony or whether they have participated in other

---

[4] Should it transpire at trial that the Government *does* indeed elicit testimony that goes beyond authenticating recordings or documents, Defendant will be free to raise his Confrontation Clause argument anew, and the Court may reconsider its ruling about pseudonymity and disguises at that time.

Government investigations, or from asking any other questions that might undermine their credibility, so long as those questions are not reasonably calculated to lead to the exposure of the witnesses' personally identifying information.

While the Court will grant in large measure the Government's Motion, the Court observes that in addition to the restrictions discussed above, the Government in its proposed order seeks further restrictions on cross-examination, such as prohibitions on Defendant's "asking any questions about the undercover witnesses' participation in other past or pending investigations," or "asking any questions regarding any FBI undercover program writ large to include training and operations." (ECF No. 99-6.) The Government provides no authority for such sweeping restrictions on the scope of cross-examination, nor does it explain why these extra restrictions are necessary to maintain the anonymity of the witnesses. Thus, the Government's requests will be denied with respect to these restrictions. The denial will be without prejudice to the Government raising an objection at trial if Defendant inquires into these subjects, on the grounds that the testimony sought would be classified, would improperly lead to the exposure of the witness's identity, or would be otherwise improper under evidence law.

For these reasons, the Court will permit the three undercover witnesses to testify at trial under pseudonyms and in light disguises, and will prohibit Defendant from asking questions on cross-examination intended to elicit personally identifying information about the witnesses, but will not impose the more restrictive limits on cross-examination sought by the Government.[5]

---

[5] The Court notes that the parties agreed in open court at the Motions Hearing that neither side would seek to elicit testimony that would have the effect of revealing to the jury that the witnesses were testifying pseudonymously.

**II.     Motion for Protective Order Permitting Partial Closure of Courtroom (ECF No. 113)**

The Government requests that the Court order the partial closure of the courtroom during the testimony of the three undercover witnesses discussed above. Under the Government's proposal, the courtroom would be cleared of all non-essential individuals while these witnesses testify. Members of the public would be able to listen in to the proceedings in a separate room via a contemporaneous audio broadcast. (ECF No. 113 at 1–2.) This Motion will be granted.

   *C.  Legal Standard*

The Sixth Amendment guarantees to all criminal defendants the right to a "speedy and public trial." First Amendment speech protections also apply to criminal trials. *Waller v. Georgia*, 467 U.S. 39, 44 (1984). Under *Waller*, "the press and public have a qualified First Amendment right to attend a criminal trial." *Id.* As is indicated by the word "qualified," this right is not absolute. A court may close a criminal proceeding to the public upon a finding that (1) there is an "overriding interest" likely to be prejudiced and (2) the closure is no broader than necessary to protect that interest. *Id.* at 48. Moreover, (3) the trial court must consider reasonable alternatives, and (4) there must be adequate findings to support the closure. *Id.* The party seeking the closure bears the burden of persuading the Court that such closure is appropriate. *Id.*

The Fourth Circuit has held that when the closure of a proceeding is merely partial, a "substantial reason," rather than an overriding interest, is enough to justify the restriction. *United States v. Barronette*, 46 F.4th 177, 193 (4th Cir. 2022) (quotation omitted). Maintaining courtroom security and preventing witness intimidation are—at a minimum—substantial reasons for a partial closure, and are likely to also meet the higher "overriding interest" standard. *Id.*

### D. Analysis

The Court is satisfied that a partial closure of the courtroom is appropriate on the facts of this case. Turning first to the "overriding interest"/"substantial reason" analysis, there is no question that the safety of witnesses is at the very least a substantial reason, if not an overriding interest, justifying restrictive measures. *See Barronette*, 46 F.4th at 193. The Government has carried its burden of showing that the requested partial closure is necessary. The Government's sealed exhibits reveal a substantial risk that—without these precautions—the witnesses' identities could be exposed even if they wear light disguises and use pseudonyms, and that the publication of their identity could lead to harassment or violence. (*See* ECF No. 99-1–99-5.) Moreover, the measures sought by the Government are no more restrictive than necessary. Members of the public will be barred from sitting in the gallery of the courtroom during the testimony of the three undercover witnesses. However, the Court will arrange for a simultaneous audio broadcast of the testimony to be relayed to a satellite room in the courthouse, so members of the public will still be fully apprised as to trial proceedings. In so doing, the Court will also take steps to ensure that the partial closure is not apparent to members of the jury to minimize any potential prejudice to Defendant.

The Court has considered two reasonable alternatives and finds that neither is prudent. One alternative, as the Government suggests, would be to require the undercover witnesses to wear "heavy disguises" as opposed to "light disguises," but heavy disguises might be too distracting and might impair the jury's ability to evaluate witness credibility. Moreover, there is a risk that even a heavy disguise would not suffice to prevent members of the public from identifying the witnesses. (ECF No. 113 at 6.) Another alternative the Court has considered is having the witnesses testify from a corner of the courtroom and to erect a screen or drape that would prevent

individuals in the gallery from seeing the witness, while allowing the jury, counsel, Defendant, and the Court to still observe the witness. However, this approach would be unnecessarily prejudicial to Defendant, because the jury would be aware that the witnesses' identities were secret—and this could suggest to the jury that the Defendant is unusually dangerous. Accordingly, Defendant indicated at the Motions Hearing that he would prefer that the Court clear the gallery of members of the public rather than pursue this alternative. By contrast, under the Court's planned approach, the jury will be unlikely to be aware that members of the public were not allowed to be present for the testimony of these three witnesses, as discussed above.

For these reasons, the Motion will be granted.[6]

### III. Defendant's Motion to Compel Notice Pursuant to FISA § 702 (ECF No. 107)

Section 702 of FISA permits, under specified conditions and procedures, warrantless surveillance of persons reasonably believed to be located outside the United States. 50 U.S.C. § 1881a; *see also United States v. Muhtorov*, 20 F.4th 558, 586–90 (10th Cir. 2021) (describing the framework of § 702 in detail). The statute also authorizes the government to intercept communications between individuals in the United States and those located abroad, although "the intentional targeting of 'any person known at the time of acquisition to be located in the United States'" is prohibited. *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 201 (4th Cir. 2017) (quoting 50 U.S.C. § 1881a(b)).

To safeguard the Due Process rights of individuals when information obtained pursuant to § 702 is used against them in any adversarial proceeding, FISA requires the Government to give advance notice of its intent to use FISA-derived information. The statute provides as follows:

---

[6] At the Motions Hearing, counsel for Defendant inquired as to whether Defendant's family would be permitted to remain in the gallery while the witnesses testified. The parties agreed to confer on this issue and attempt to come to a resolution.

> Whenever the Government intends to enter into evidence or otherwise use or disclose in any trial, hearing, or other proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, against an aggrieved person, any information obtained or derived from an electronic surveillance of that aggrieved person pursuant to the authority of this subchapter, the Government shall, prior to the trial, hearing, or other proceeding or at a reasonable time prior to an effort to so disclose or so use that information or submit it in evidence, notify the aggrieved person and the court or other authority in which the information is to be disclosed or used that the Government intends to so disclose or so use such information.

50 U.S.C. § 1806(c).

In short, and as relevant here, in a criminal trial, when the Government intends to introduce evidence "obtained or derived from an electronic surveillance" of the defendant pursuant to § 702, it must notify the defendant and the Court in advance. 50 U.S.C. §§ 1806, 1881e(a)(1). This procedure provides an opportunity for the defendant to "challenge the lawfulness of the acquisition" of the evidence. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 421 (2013).

The Government has not provided a § 702 notice in this case. However, Defendant believes that the Government has used § 702-derived information in its investigation of him, and that he is therefore entitled to a § 702 notice. Defendant argues that the Government has a "track-record" of failing to provide § 702 notices to defendants, and fears that the Government is deciding on an *ex parte* basis, without any judicial review or adversarial testing, whether notice is warranted. (ECF No. 107 at 10.) He has no definitive evidence showing that § 702 information was used in the Government's investigation, but he points to media reports and public statements by FBI officials about § 702 being instrumental in the foiling of a plot to destroy critical infrastructure in the United States. Defendant believes that these descriptions are consistent with the FBI's having used § 702 in its investigation of him. (*See generally id.*) At the Motions Hearing, counsel for Defendant represented that, after conducting an extensive search of public criminal dockets, this case is the only one for which the facts are consistent with the FBI's public description of its use

of § 702.  However, Defense counsel conceded that it is possible that the FBI's statements could be referring to secret investigations or sealed cases that are unknown both to counsel and to the Court.  The Government has neither confirmed nor denied that it used § 702 in its investigation of Defendant, and maintains that the answer to that question is classified.  It further asserts that in any event not all of the criteria necessary to trigger an obligation to provide a § 702 notice under 50 U.S.C. § 1806(c) have been met, although it does not clarify which individual elements it believes have been met or not met.[7]  (ECF No. 110.)

Defendant also argues that notice is required under Federal Rule of Criminal Procedure 16 and by the Supreme Court's holding in *Alderman v. United States*, 394 U.S. 165 (1969).  (ECF Nos. 107 at 11–12, 123 at 5–10.)  Defendant's briefing—as supplemented at the Motions Hearing—raises difficult questions about a complex statutory scheme and its intersection with constitutional and other protections.  Moreover, there is a threshold question that has not been adequately briefed by either party—namely, the extent to which this Court has the authority to compel the Government to produce a § 702 notice, or explain why such notice was not forthcoming, in a situation where the Government has stated on the record that it has determined that such notice is not warranted.

In light of the complexity of the issues, the inadequacy of the briefing, and the seemingly

---

[7] The entirety of the Government's discussion of its § 702 notice obligation is the follows:

> That notice obligation regarding the use of FISA information under 50 U.S.C. §§ 1806(f), 1825(d), and 1881(e) applies only if the government (1) "intends to enter into evidence or otherwise use or disclose" (2) "against an aggrieved person" (3) in a "trial, hearing or other proceeding in or before any court, department officer, agency, regulatory body, or other authority of the United States" (4) any "information obtained or derived from" (5) "electronic surveillance [or physical search] of that aggrieved person."  50 U.S.C. §§ 1806(c) and 1825(d).  Only where all five criteria are met must the government provide notice that the United States intends to use or disclose such information. In this case, the government has determined that a FISA notice is not required.

(ECF No. 110 at 2.)

limited directly controlling caselaw, the Court considered at the Motions Hearing the reality that—if § 702 was not used in this matter at all—then all the above questions would be moot. However, counsel for the Government stated that the answer to that question was classified. Accordingly, the Court suggested, and the Government accepted, that the issues could be better understood through an *ex parte* and *in camera* review of the relevant information with the Government's counsel. Defendant did not object to this proposal, although he indicated that he intends to file a motion to suppress evidence against him that he believes was unlawfully obtained. Moreover, Defendant continues to insist that he is entitled to litigate whether any evidence "obtained or derived from" any electronic surveillance pursuant to § 702 contributed to the Government's investigation or prosecution of him.

Given the unusual procedural and legal posture of this issue, and given the parties' agreement that it would be appropriate for the Court to conduct an *ex parte* and *in camera* hearing with the Government on preliminary questions of whether FISA § 702 is implicated in this case, the Court will deny Defendant's Motion to Compel without prejudice. The Court may reconsider the Motion depending on the outcome of this hearing, and Defendant is entitled to raise the issues presented in his Motion again in an appropriate Motion to Suppress.

### IV.   Other Motions

The Court will briefly address three other Motions that are pending on the docket.

First, there is the Government's ECF No. 101 Motion to Seal, which is simply a redacted, unsealed version of the sealed Motion to Seal (ECF No. 98), which the Court granted in relevant part in its May 24, 2024 Order. (ECF No. 100.) For the avoidance of any confusion, and without objection from Defendant, this Motion to Seal will be granted.

Next, the Government filed an *ex parte* Motion on June 17, 2024. (ECF No. 112.)

However, at the Motions Hearing, the Government advised the Court that it is withdrawing this Motion. Accordingly, the Court will deny the Motion as moot.

Finally, the Government has filed a Motion to Seal its *ex parte* Motion. (ECF No. 111.) The Motion will be granted, because the *ex parte* Motion contains information that could be damaging to the safety of an undercover witness if publicized. For this reason, ECF No. 112 shall remain sealed.[8]

## V.   Conclusion

For the foregoing reasons, a separate order will issue: (1) granting in part and denying in part the Government's Motion for Protective Order Regarding Undercover Witnesses (ECF Nos. 99, 102); (2) granting the Government's Motion for Protective Order Permitting Partial Closure of Courtroom (ECF No. 113); (3) denying without prejudice Defendant's Motion to Compel Notice Pursuant to FISA § 702 (ECF No. 107); (4) granting the Government's Motions to Seal (ECF Nos. 101, 111); and (5) denying as moot the Government's sealed *ex parte* Motion (ECF No. 112).

DATED this **2nd** day of July, 2024.

BY THE COURT:

/s/ JAMES K. BREDAR
James K. Bredar
United States District Judge

---

[8] At the Motions Hearing, the Court stated that this Motion would be denied as moot in light of the Government's withdrawal of the e*x parte* Motion. However, upon further consideration, the Court does not wish to inadvertently cause the unsealing of the Government's *ex parte* Motion, despite its withdrawal. Thus, the Court will grant the Motion to Seal for the purpose of ensuring that the withdrawn *ex parte* Motion remains under seal on the docket.