**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** | * |
| **v.** | * |
| **BRANDON CLINT RUSSELL,** | * |
| **Defendant.** | * |

\* \* \* \* \* \* \* \* \* \* \* \*

Crim. No. 23-00056-JKB

## MEMORANDUM AND ORDER

A jury trial in this matter is scheduled for November 2024. In advance of that trial, on July 2, 2024, the Court issued a Memorandum and accompanying Order permitting three anticipated Government witnesses to testify under pseudonym and in light disguise, and imposing certain other trial restrictions to protect witness safety. (ECF Nos. 134, 135.)

After the Court's July 2 Order, the Defendant reevaluated his position concerning the necessity of the testimony of the three witnesses who have been permitted to testimony under pseudonym. He informed the Government on July 15 that he was now willing to "stipulate to the authenticity of the digital and audio recordings," and that "such a stipulation will obviate the need for the three witnesses to testify in secret." (ECF No. 136 at 2–3.) The following day, the Government responded and indicated that it would refuse to accept such a stipulation. (*Id.* at 3.)

In light of the Government's refusal to accept the Defendant's stipulation, Defendant filed the instant Motion to Reconsider (ECF No. 136), which asks the Court to reconsider the July 2 Order. The Government has responded (ECF No. 142), and the deadline for the Defendant to file a Reply has elapsed. For the following reasons, the Motion to Reconsider will be denied.

## I.      Legal Standards

### A.  *Standard for Motions to Reconsider*

There is no provision in the Federal Rules of Criminal Procedure governing motions to reconsider.  However, when evaluating motions for reconsideration in criminal cases, courts in this Circuit have looked for guidance to Rule 59(e) of the Federal Rules of Civil Procedure. *See United States v. Royal*, Crim. No. TDC-09-0048, 2022 WL 3648027, at *2 (D. Md. Aug. 24, 2022); *United States v. Carroll*, Crim. No. 7:12-57-F, 2012 WL 5350364, at *1 (E.D.N.C. Oct. 29, 2012). Motions for reconsideration may be granted on one of three grounds: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence, or (3) to correct a clear error of law or to prevent manifest injustice. *Wojcicki v. SCANA/SCE&G*, 947 F.3d 240, 246 (4th Cir. 2020).

### B.  *Standards for Proposed Stipulations in Criminal Trials*

As a general matter, "the prosecution is entitled to prove its case by evidence of its own choice, or, more exactly, . . . a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it." *Old Chief v. United States*, 519 U.S. 172, 186–87 (1997).  When a criminal defendant challenges the Government's refusal to stipulate to a piece of relevant evidence, the Court must determine whether the probative value of the evidence would be substantially outweighed by one of the dangers set forth in Federal Rule of Evidence 403. *See id.* at 180.  When conducting this analysis, the balance will usually tip in favor of permitting the Government to reject a proposed stipulation "when a defendant seeks to force the substitution of an admission for evidence creating a coherent narrative of his thoughts and actions in perpetrating the offense for which he is being tried." *Id.* at 192. The Supreme Court has explained that evidence presented to a jury has force beyond the strict logical satisfaction of

2

elements of a charge, but instead may serve "as much to tell a story of guiltiness as to support an inference of guilt, to convince the jurors that a guilty verdict would be morally reasonable as much as to point to the discrete elements of a defendant's legal fault." *Id.* at 188. Moreover, jurors may be confused or unconvinced by evidence presented in the dry form of stipulated facts. *See id.* at 189 ("People who hear a story interrupted by gaps of abstraction may be puzzled at the missing chapters, and jurors asked to rest a momentous decision on the story's truth can feel put upon at being asked to take responsibility knowing that more could be said than they have heard.").

In *Old Chief*, the Supreme Court recognized a narrow exception to this general rule: "when the point at issue is a defendant's legal status, dependent on some judgment rendered wholly independently of the concrete events of later criminal behavior charged against him." *Id.* at 190. Thus, when an individual is charged with, for example, possession of a firearm by a prohibited person by virtue of a prior felony conviction, he will usually be entitled to demand that the government stipulate to the fact of the prior conviction to avoid unfair prejudice from the Government revealing extraneous details about the prior crime to the jury. *See id.* at 191–92.

The Fourth Circuit has interpreted *Old Chief*'s exception narrowly, declining to extend its holding beyond cases involving a defendant's legal status. *See United States v. Miller*, 61 F.4th 426, 431–33 (4th Cir. 2023) (defendant charged with transferring obscene material to a minor not entitled to stipulate that he knew that the victim was underage); *United States v. Dunford*, 148 F.3d 385, 395–96 (4th Cir. 1998) (defendant charged with possession of firearm by an illegal drug user not entitled to stipulate that he was an illegal drug user); *see also United States v. Bivins*, 104 F. App'x 892, 899 (4th Cir. 2004) ("Our circuit has interpreted *Old Chief* to apply only in cases where the disputed evidence 'relate[s] . . . to facts far removed in time from the underlying [crimes] with which [the defendant] was charged.'" (quoting *Dunford*, 148 F.3d at 396) (alterations in original)).

3

## II.     Discussion

The Defendant has failed to show adequate grounds for reconsideration of the Court's July 2 Order.  The Court recognizes that the Defendant's proposed stipulation would "preclude[] the need for disguises, allow[] for an open and public courtroom, and nullif[y] the Government's witness safety concerns."  (ECF No. 136 at 5.)  Indeed, the Court identified these issues as raising potential concerns, and it remains the case that "this Court strongly disfavors witness anonymity."[1] (ECF No. 134 at 4.)  However, as the Court previously explained, such restrictions, if carefully tailored and predicated on an adequate factual basis, are permissible and do not encroach on a criminal defendant's confrontation and public trial rights.[2]  (*See id.* at 3–6.)  In this case, the Court found that the restrictions were necessary for witness safety and would have minimal prejudice on the Defendant given that the witnesses' testimony would be limited to authenticating documents and recordings of conversations allegedly involving the Defendant.  (*Id.*)

Moreover, the Defendant's proposal would require the Government to stipulate to

---

[1] The Defendant also argues that the proposed stipulation would "obviate[] the need for the witnesses to testify in secret," (ECF No. 136 at 5), but this is hyperbolic and mischaracterizes the Court's July 2 Order. The testimony will not be "in secret"; the jurors will be fully able to hear and see the witnesses' testimony and evaluate their credibility, the Defendant will be present and entitled to confront them, they will be subject to cross-examination, and members of the public and press will be able to listen in to a simultaneous audio stream of the testimony.

[2] At the Motions Hearing on June 27, 2024, the Court considered the Defendant's proposal that the identities of the undercover witnesses be shared with Defense Counsel, on Defense Counsel's agreement not to share the information with the Defendant himself.  The Court rejected this proposal on the grounds that it would pose practical difficulties to the attorney-client relationship if counsel is entrusted with information that they cannot share with their client.  Moreover, if the identities of the witnesses are shared with Defense Counsel, then the Government would presumably need to operate on the assumption that the anonymity of their witnesses has been compromised, which would impair the ability of undercover agents to participate in any future investigations. *See United States v. Chaoqun*, Crim. No. 18-611, 2022 WL 2543846, at *3 (N.D. Ill. July 7, 2022), *aff'd*, 107 F.4th 715 (7th Cir. 2024) (permitting the Government to conceal the identity of an undercover witness and rejecting a defendant's request that the witness's personal information be disclosed to his counsel, because "use of the undercover employee's personal information as a basis for conducting a wider search would increase the likelihood of exposing, however inadvertently, the identity of the undercover agent and his/her family").  The Defendant has not specifically renewed this proposal, and the Court does not have any reason to revisit its conclusion at this time.

conversations allegedly involving the Defendant and, at times, his co-conspirator, regarding the alleged conspiracy. In a conspiracy case such as this—where there is no allegation that the conspiracy actually succeeded—such evidence may be essential to establishing multiple elements that the Government must prove, such as, for example, the Defendant's *mens rea*, the existence of an agreement, and whether the target of the alleged conspiracy was an "energy facility" within the meaning of 18 U.S.C. § 1366.[3] *See Old Chief*, 519 U.S. at 188 ("[A] piece of evidence may address any number of separate elements, striking hard just because it shows so much at once[.]"). If such important evidence were admitted only in the form of a lawyer reading from a transcript, the jurors may be left "puzzled, or worse, ready to 'penalize the party who disappoints them.'" *United States v. Luck*, 852 F.3d 615, 626 (6th Cir. 2017) (quoting *Old Chief*, 519 U.S. at 188–89)).

The contrast between this case and *Old Chief* is stark. In *Old Chief*, the defendant simply sought to stipulate to his "legal status," *i.e.*, to the fact that he had a qualifying prior felony conviction. 519 U.S. at 190. This legal status was wholly disconnected temporally and logically from the underlying facts surrounding his later prosecution. Here, by contrast, the Defendant seeks to compel the Government to accept an admission as to his own statements, which might be central to, if not constitutive of, the very crime charged in this case. The Defendant seeks a stipulation "not to facts far removed in time from the charged crime," but would instead require stipulation of "an eventful narrative—a relevant part of the very transactions leading to the defendant's arrest

---

[3] The Court previously discussed the "limited focus of the witnesses' testimony." (ECF No. 134 at 4 (quoting *United States v. Ramos-Cruz*, 667 F.3d 487, 501 (4th Cir. 2012).) However, just because the witnesses' testimony is limited in *focus* does not mean that the testimony will necessarily be limited in *importance*. The witnesses' testimony will be limited to authenticating and recounting conversations and statements allegedly made by or involving the Defendant. But it is possible that such evidence—while limited from a technical evidentiary sense—may be of great consequence in the Government's case. As the Court previously stated (ECF No. 134 at 5 n.4), if at trial the Government seeks to expand the scope of examination beyond what it has proffered to this point, the Defendant will be free to object and the Court may reconsider its decision on pseudonymity.

and indictment *in this case*." *Miller*, 61 F.4th at 429–30 (quotations and alterations omitted; emphasis in original). In other words, the Defendant is seeking a stipulation in the precise situation where the Supreme Court has stated that the Government's proffer "will generally survive a Rule 403 analysis": *i.e.*, "when a defendant seeks to force the substitution of an admission for evidence creating a coherent narrative of his thoughts and actions in perpetrating the offense for which he is being tried." *Old Chief*, 519 U.S. at 192.

Meanwhile, the risk of unfair prejudice to the Defendant of permitting the Government to offer the evidence using the procedures approved in the July 2 Order is low. Indeed, although the Court did previously refer to the question of whether to permit the restrictions as a "close question," (ECF No. 134 at 3), the Court reached the conclusion it did precisely because it concluded that—after weighing serious and legitimate legal considerations on both sides—the restrictions will not substantially impinge on the Defendant's Confrontation Clause or other rights. Nor will the restrictions substantially impair the jury's factfinding function. Looking at the dangers outlined in Rule 403, nothing about permitting witnesses to testify pseudonymously and in light disguise will result in such a serious risk of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence," as to "substantially outweigh" the probative value of the proffered evidence.[4]

The Court recognizes that the Government's position in insisting on presenting evidence

---

[4] The use of pseudonyms and light disguises will, of course, "mislead" the jurors in a literal sense. But the type of "misleading" that the Rule and courts are concerned about is evidence that will cause the jurors to misunderstand or misapprehend some relevant or material fact—*i.e.*, that there will be some "harm" to the factfinding process. *See* Fed. R. Evid. 403, Notes of Advisory Committee on Proposed Rules ("Situations in this area call for balancing the probative value of and need for the evidence against the harm likely to result from its admission."). Here, given that the Defendant likely never met the confidential witnesses in person and never knew their true identities, it is not clear (and the Defendant certainly has not shown) how the names or true likenesses of the confidential witnesses has any more than marginal relevance. *See* Fed. R. Evid. 401 (evidence is relevant if it has the tendency to make a fact of consequence more or less likely).

by testimony rather than through a stipulated admission somewhat belies its earlier assertions that concerns about witness safety were so serious as to demand the special restrictions the Court has imposed in this case. Of course, if the Government were truly concerned about ensuring the maximum possible degree of witness safety above all else, then not requiring the witnesses to testify at all would surely be the safest option. However, while the Government's litigation strategy might (not entirely unfairly) raise a few eyebrows, there is nothing logically inconsistent in requesting restrictions for witness safety, and then—with those restrictions in place and satisfied that those restrictions are sufficient—insisting on presenting the witnesses' testimony.

In short, nothing in the Defendant's proposed stipulation provides a basis for the Court to conclude that any part of its July 2 Order should be revised.

## III.   Conclusion

For the foregoing reasons, it is hereby ORDERED that the Defendant's Motion to Reconsider (ECF No. 136) is DENIED.

DATED this **28** day of August, 2024.

BY THE COURT:

James K. Bredar
United States District Judge

7