**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|                                   |   |                          |
|-----------------------------------|---|--------------------------|
| **UNITED STATES OF AMERICA**      | * |                          |
|                                   | * |                          |
| v.                                | * |                          |
|                                   | * | **Crim. No. JKB-23-0056** |
| **BRANDON CLINT RUSSELL,**        | * |                          |
|                                   | * |                          |
| **Defendant.**                    | * |                          |
|                                   | * |                          |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Now pending before the Court is Defendant Brandon Clint Russell's "Motion to Compel the Government to Affirm or Deny Surveillance Under the Foreign Intelligence Surveillance Act, to Disclose All of His Communications Subject to That Surveillance, and to Unseal the Government's Ex Parte Submissions and the Court's Ex Parte Report" (the "Motion to Compel"). (ECF No. 146.)  The Motion to Compel is fully briefed, (*see* ECF Nos. 170 (the Government's Response in opposition), 172 (the Defendant's Reply)), and no hearing is necessary. *See* Local Rule 105.6.  For the following reasons, the Motion to Compel will be denied.

**I.      Background**

The Defendant is charged in a single-count Indictment with conspiracy to damage an energy facility in violation of 18 U.S.C. § 1366(a).  (ECF No. 25.)  A jury trial is scheduled for November 2024.  (ECF No. 122.)

The Defendant contends that, in the course of its investigation of him, the Government unlawfully surveilled him using its powers under § 702 of the Foreign Intelligence Surveillance Act ("FISA"), 50 U.S.C. § 1881a.  This belief derives from the fact that Federal Bureau of Investigation ("FBI") officials made several statements in the press about how it used its

surveillance authority under § 702 to thwart an alleged terrorist plot against critical domestic infrastructure. (*See* ECF No. 146 at 13–15.) The Defendant believes that these statements must have been referring to his case, because, he contends, there is no other publicly known case whose facts are consistent with these public statements. (*Id.*)

This is now the second time that the question of whether the Government should be compelled to provide notice of FISA surveillance has come before the Court in this case. In June 2024, the Defendant filed an earlier Motion to Compel that sought to force the Government to issue a notice, pursuant to 50 U.S.C. § 1806(c), of its intent to use information obtained or derived from FISA § 702 at trial. (ECF No. 107.) The Court held a hearing on that motion and several other motions on June 27, 2024. As the Court explained at that time:

> In light of the complexity of the issues, the inadequacy of the briefing, and the seemingly limited directly controlling caselaw, the Court considered at the Motions Hearing the reality that—if § 702 was not used in this matter at all—then all the above questions [about whether the Government should be compelled to issue a notice under 50 U.S.C. § 1806(c)] would be moot. However, counsel for the Government stated that the answer to that question was classified. Accordingly, the Court suggested, and the Government accepted, that the issues could be better understood through an *ex parte* and *in camera* review of the relevant information with the Government's counsel. Defendant did not object to this proposal, although he indicated that he intends to file a motion to suppress evidence against him that he believes was unlawfully obtained. Moreover, Defendant continues to insist that he is entitled to litigate whether any evidence 'obtained or derived from' any electronic surveillance pursuant to § 702 contributed to the Government's investigation or prosecution of him.

(ECF No. 134 at 11–12.)

The Court held the contemplated *ex parte* and *in camera* conference on July 23, 2024, during which "the Court reviewed certain classified written submissions and oral representations proffered by Government counsel." (ECF No. 143 at 3.) After that conference, the Court made

2

the following findings in its unclassified Memorandum dated August 7, 2024:[1]

> On the basis of the Conference, the Court is satisfied that the Government will not introduce or otherwise use at trial or any other proceeding in this case any evidence obtained or derived from an electronic surveillance of Defendant pursuant to FISA § 702. The Court finds that there is no basis on which to believe or suspect that the rights of Defendant have been violated in any way with respect to any government activities authorized by FISA. Accordingly, Defendant is not entitled to notice under 50 U.S.C. § 1806(c).

(ECF No. 143 at 3.)

Although these findings would seem to conclusively settle the matter at this stage of the litigation, the Defendant was unsatisfied. He filed the instant Motion to Compel on August 14, 2024, which—although not styled as such—is essentially a motion to reconsider the Court's August 7 Memorandum. The Motion to Compel requests that the Court order the Government to "affirm or deny surveillance of Mr. Russell conducted pursuant to Section 702 of FISA," to "disclose to Mr. Russell all communications to which he was a party that the FBI acquired or accessed pursuant to Section 702 of FISA at any point in its investigation," and to "provide Mr. Russell with notice of its intent to use or disclose information obtained pursuant to Section 702 of FISA[.]" (ECF No. 146-1 at 1.) In support of these requests, the Defendant argues that he is entitled to disclosure under four different sources of law: 50 U.S.C. § 1806(c); 18 U.S.C. § 3504; Federal Rule of Criminal Procedure 16; and the Due Process Clause of the United States Constitution. (*See generally* ECF No. 146.) The Court will address each of these arguments in turn.

The Motion to Compel also requests that the Court unseal "[t]he portions of the government's ex parte submissions and the ex parte report resulting from the July 23, 2024 conference that relate to the acquisition, querying, or accessing of Mr. Russell's communications

---

[1] A separate, classified Report was also issued contemporaneously with the unclassified Memorandum. The classified Report has been preserved for any future appellate review.

under Section 702 of FISA[.]" (ECF No. 146-1 at 2.) The Court will also address this request.

## II.     50 U.S.C. § 1806(c)

The Defendant's first argument in favor of disclosure can be disposed of easily. Under 50 U.S.C. § 1806(c), "[w]henever the Government intends to enter into evidence or otherwise use or disclose in any trial . . . against an aggrieved person, any information obtained or derived from an electronic surveillance of that aggrieved person pursuant to [FISA], the Government shall, prior to the trial . . . notify the aggrieved person and the court . . . in which the information is to be disclosed or used that the Government intends to so disclose or so use such information."

As noted above, the Court has already expressly held that the "Defendant is not entitled to notice under 50 U.S.C. § 1806(c)" because, based on the classified record, the Court is satisfied that the Government will not use or disclose any information obtained or derived from an electronic surveillance of the Defendant pursuant to any provision of FISA. (ECF No. 143 at 3.) Although the Defendant strenuously disagrees with this conclusion, he presents no new arguments in the instant Motion to Compel with respect to his § 1806(c) argument that he had not raised in his earlier Motion to Compel.

Moreover, even if the Defendant were correct that he was entitled to notice, no steps would then be compelled beyond those already undertaken by the Court. Even if the Government did provide notice that it intended to use FISA-derived evidence, the only procedural remedy the Defendant would receive under § 1806 is an *ex parte* and *in camera* review of the supposed evidence under the procedures set forth in § 1806(f), which is essentially what *already happened* in this case. The Court held an *in camera*, *ex parte* review with Government counsel of any purported materials on July 23, 2024. On the basis of that review, the Court concluded that the Defendant is not entitled to any further relief. *See United States v. Squillacote*, 221 F.3d 542, 554

4

(4th Cir. 2000) ("The language of section l806(f) clearly anticipates that an *ex parte*, *in camera* determination is to be the rule. Disclosure and an adversary hearing are the exception, occurring *only* when necessary." (quoting *United States v. Belfield*, 692 F.2d 141, 147 (D.C. Cir. 1982) (emphasis in original))).

Accordingly, the Motion to Compel will be denied with respect to this argument.

## III.     18 U.S.C. § 3504

18 U.S.C. § 3504(a) provides, in relevant part:

> In any trial, hearing, or other proceeding in or before any court . . . upon a claim by a party aggrieved that evidence is inadmissible because it is the primary product of an unlawful act or because it was obtained by the exploitation of an unlawful act, the opponent of the claim shall affirm or deny the occurrence of the alleged unlawful act[.]

The statute defines "unlawful act" as "the use of any electronic, mechanical, or other device (as defined in section 2510(5) of this title) in violation of the Constitution or laws of the United States or any regulation or standard promulgated pursuant thereto." *Id.* § 3504(b).[2]

As leading commentators have observed, "[i]t is not clear whether Section 3504 applies to FISA surveillance." Donald S. Kris & J. Douglas Wilson, *National Security Investigations and Prosecutions*, § 29:7 (3d ed. Apr. 2023 update) (hereinafter "Kris & Wilson"). Section 3504 facially applies to all unlawful surveillance (foreign or domestic), and there is evidence from FISA's legislative history that Congress contemplated the possibility that § 3504 would supplement FISA, rather than be supplanted by it, *see* S. Rep. 95-701, 63, *as reprinted in* 1978 U.S.C.C.A.N. 3973, 4032, but the § 3504 mechanisms are in some tension with the detailed notice provisions of 50 U.S.C. §§ 1806 and 1825. Neither party has cited (nor is the Court aware of) any

---

[2] 18 U.S.C. § 2510(5), in turn, defines "electronic, mechanical, or other device" as "any device or apparatus which can be used to intercept a wire, oral, or electronic communication," with exceptions not relevant here.

5

directly controlling authority on point.[3]

The parties vigorously dispute whether 18 U.S.C. § 3504 applies to foreign intelligence activities conducted pursuant to FISA, or whether § 3504 gives way to FISA's more specific notice provisions. There is merit to arguments on both sides. Ultimately, however, the Court need not decide whether § 3504 applies to FISA surveillance. The Court will assume *arguendo* that, in the appropriate circumstance, a defendant could be entitled to compel the Government, pursuant to § 3504, to affirm or deny whether it had surveilled him pursuant to FISA. However, in this case, the Defendant is not entitled to such notice.

Under Fourth Circuit precedent applying § 3504, "a party claiming to be the victim of illegal electronic surveillance must first demonstrate that his interests were affected before the government's obligation to affirm or deny is triggered." *United States v. Apple*, 915 F.2d 899, 905 (4th Cir. 1990). To meet this requirement, a party must first make a "definite 'claim'" that they are an aggrieved person. *Id.* At this first stage, the movant need only provide the "mere assertion . . . that illegal surveillance has taken place." *Id.* (quotation omitted). But, at the next stage, "the claimant must also make a prima facie showing that he was 'aggrieved' by the surveillance; that is, that he was a party to an intercepted communication, that the government's efforts were directed at him, or that the intercepted communications took place on his premises. *This critical* [second] *showing may not be based on mere suspicion; it must have at least a 'colorable basis.'*" *Id.* (emphasis added) (quoting *United States v. Pacella*, 622 F.2d 640, 643 (2d Cir. 1980)).

---

[3] In *United States v. Hamide*, 914 F.2d 1147, 1148–49 (9th Cir. 1990), the Ninth Circuit observed that aliens in an immigration proceeding had, in immigration court below, moved under § 3504 for the Government to affirm or deny FISA surveillance, but the Ninth Circuit did not opine on the propriety of a § 3504 motion in that context. More recently, a district court held that, in the FISA context, a motion to compel under § 3504 was unavailable because "FISA's particularized notice, disclosure, and suppression procedures supplant the requirements of § 3504." *United States v. Aziz*, 228 F. Supp. 3d 363, 370 (M.D. Pa. 2017).

6

The Defendant has doubtless met the first prong of the *Apple* test, because he has clearly (and repeatedly) claimed that he was the victim of illegal surveillance. But the Defendant stumbles at the second prong of the *Apple* test because he fails to make a prima facie showing that he was aggrieved by government surveillance of him. As one court has observed, the facts of *Apple* itself suggest that the prima facie showing requirement is a somewhat "demanding" one. *In re Grand Jury Investigation*, 431 F. Supp. 2d 584, 590 (E.D. Va. 2006). In *Apple*, the court held that a defendant failed to make a prima facie showing that he was the subject of surveillance—despite the uncontroverted fact that his friend's phone, which the defendant had allegedly called, had been wiretapped—because the defendant failed to identify which specific phone calls he made to the wiretapped phone during the time period that the phone was under surveillance. 915 F.2d at 907. Like the defendant in *Apple*, here the Defendant has failed to make a prima facie showing because his claim rests on suspicion and unsubstantiated allegations.

Notably, beyond his general allegations that he was subject to FISA surveillance, the Defendant has not pointed to a *single* conversation, document, or other material that he alleges was unlawfully surveilled. Instead, the Defendant relies entirely on out-of-court statements by Department of Justice officials and a *Politico* article that he believes prove that he was the subject of surveillance under FISA § 702. This supposed proof consists of fairly generic statements strung together from a speech by FBI Director Christopher Wray, an FBI press release about that speech, and statements in a *Politico* article attributed to an unnamed FBI official. (*See* ECF No. 146 at 13.) The Defendant lists various similarities between the public statements and the facts of this case. (*See id.* at 14–15 (listing similarities between the public statements and this case, such as the fact that this was an alleged terror plot against critical United States infrastructure by a United States person in 2023).) However, the alleged thwarted attack referenced in those statements,

7

while *consistent* with the facts of this case, is not so closely tied to the facts of this case as to make any connection between those statements and this case more than speculative.

The Court accepts Defense Counsel's representation that they searched all public criminal dockets and found no other case that corresponds to the facts of the public statements other than the case at bar. The problem is that this representation simply does not get the Defendant very far. Neither the Court nor the Defendant know or have any way of knowing how many nonpublic matters might *also* correspond to the public statements at issue. Some cases could be under seal in whole or in part, others might still be in investigative stages, and others still might not have led to criminal charges at all. In highly sensitive domestic terrorism cases, it is all the more likely that the statements could be referring to information that is classified or otherwise secret. As the Court previously put it during the June 27, 2024, motions hearing, "so much of what goes on in this context is . . . behind the veil of secrecy." (ECF No. 138 at 38.) In fact, counsel for the Defendant conceded at that hearing that it is "unknown" how often the Government has used FISA in cases similar to this one. (*Id.* at 36.)

Under these circumstances, the Defendant has failed to meet his burden of making a prima facie showing sufficient to require the Government's affirmance or denial of surveillance under 18 U.S.C. § 3504. *See United States v. Nicka*, Crim. No. RWT-10-0777, 2013 WL 12187497, at *2 (D. Md. Oct. 15, 2017) (holding that defendants failed to make a prima facie showing that they were the subject of unlawful surveillance when they alleged, but failed to make a sufficient showing, that a prosecutor had intercepted a phone conversation between defense co-counsel). "Put simply, bare allegations that the government has been intercepting communications through illegal electronic surveillance will not trigger the requirement that the government affirm or deny those allegations." *In re Grand Jury*, 431 F. Supp. 2d at 591. The Court recognizes that the

8

Defendant is in the difficult position of trying to prove "conduct which is by its nature secret," but "it is also true that unsubstantiated allegations are too easily made to justify the expense and delay which would result from requiring the government to dispel every allegation, no matter how frivolous." *Id.* (quotation omitted); *see also United States v. Al-Timini*, Crim. No. LMB-04-0385, 2014 WL 12957760, at *5 (E.D. Va. Apr. 28, 2014) (denying a defendant's post-conviction motion to compel FISA discovery when his "request rest[ed] heavily on plausible-sounding speculation" and when he failed to "describe the evidence sought with any particularity").

For these reasons, the Court will not require the Government to affirm or deny the existence of FISA surveillance under 18 U.S.C. § 3504.[4]

## IV.    Rule 16

Under Federal Rule of Criminal Procedure 16(a)(1)(E) and as relevant here, a criminal defendant is entitled to discovery of materials that are "within the government's possession, custody, or control" and that are either "material to preparing the defense," or were "obtained from or belong[] to the defendant." And under Rule 16(a)(1)(B), the Government must produce "any relevant written or recorded statement" of the defendant within its possession. Furthermore, Rule 16(d)(1) permits a court to "deny, restrict, or defer discovery" for "good cause." "Good cause includes the protection of information vital to the national security." *United States v. Moussaoui*, 591 F.3d 263, 281 (4th Cir. 2010), *as amended* (Feb. 9, 2010) (cleaned up).

To establish the materiality of information sought in discovery, "the defendant bears the burden of showing some indication that the pretrial disclosure of the disputed evidence would enable the defendant significantly to alter the quantum of proof in his favor. A conclusory

---

[4] Further, while not necessary to this part of the ruling, the Court notes that it took the opportunity to review the relevant classified record. From the instant ruling it is a reasonable inference that nothing seen in that review undercuts the conclusions the Court reaches.

9

allegation of materiality does not satisfy the defendant's burden." *United States v. Sanders*, 107

F.4th 234, 253 (4th Cir. 2024) (cleaned up).  The defendant must make a "strong indication" that

the evidence sought "will play an important role in uncovering admissible evidence, aiding witness

preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v.*

*Caro*, 597 F.3d 608, 621 (4th Cir. 2010).

Under these standards, the Defendant has failed to show that the information he seeks

would be "material to preparing the defense" or that the information was "obtained from or belongs

to" him.  The Defendant does not contend that the information sought would be exculpatory or be

relevant for impeachment.  He hopes that the information would provide the basis for him to file

a motion to suppress evidence.  However, as the Court explained above, even if the Court were to

direct the Government to provide notice of any FISA surveillance, the Court has already

determined that the Government will not introduce at trial or any other proceeding evidence

obtained or derived under FISA.  Thus, the chances of success on such a motion appear to be

remote at best.  And, as for the Defendant's allegation that he is entitled to statements that were

"obtained from or belong[]" to him, he relies entirely on the same speculative argument discussed

above, that the FBI's public statements mean the FBI must have surveilled him, and does not point

to any specific evidence that he asserts was obtained from or belongs to him.

Moreover, the Court's review of the classified record in this case reinforces its conclusion

that the information sought by the Defendant will be neither "material to preparing the defense"

nor "obtained from or belong[ing] to" him. *Cf. United States v. Hoffman*, 612 F. App'x 162, 171–

72 (4th Cir. 2015), *as amended* (June 2, 2015) (holding that evidence sought in discovery was not

material "[u]pon our in camera review of the classified materials").

Finally, even if the information were otherwise discoverable in a more routine criminal

10

case, the Court considers the classified nature of the information sought. Courts have held that when a criminal defendant seeks discovery of classified information, a higher showing of materiality may be necessary to balance against the public interest in safeguarding national security. *See United States v. Mejia*, 448 F.3d 436, 456 (D.C. Cir. 2006) ("Classified information is not discoverable on a mere showing of theoretical relevance; the threshold for discovery in this context further requires that the information be at least helpful to the defense of the accused" (cleaned up)); *United States v. Rahman*, 870 F. Supp. 47, 50 (S.D.N.Y. 1994) (balancing a defendant's request for classified discovery under Rule 16 "against the possible damage to the government's security interests from disclosure"). Thus, even if the Defendant had made some marginal showing of materiality (which he has not), the Court would likely deny the disclosure request for good cause under Rule 16(d)(1), because the information sought is "classified information subject to the governmental privilege." *Hoffman*, 612 F. App'x at 172; *see also* Kris & Wilson § 26:6 n.6 (collecting cases).

## V.  Due Process Clause

The same constitutional rights to which a criminal defendant is entitled in an ordinary criminal case apply with equal force when, as here, the case involves classified information. *See Moussaoui*, 382 F.3d at 471–72 ("[A] defendant becomes entitled to disclosure of classified information upon a showing that the information is relevant and helpful to the defense[.]" (quotation omitted)). A criminal defendant has a due process right to "request and obtain from the prosecution evidence that is . . . material to the guilt of the defendant." *United States v. Johnson*, 996 F.3d 200, 206 (4th Cir. 2021) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984) (alteration in original)). And, under the rule announced in *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Government has an affirmative obligation to turn over all favorable material in its

11

possession to a defendant, even in the absence of a defendant's request.

A defendant's constitutional right to obtain certain categories of information relevant to preparing his defense is foundational to our criminal justice system. Nevertheless, that right is not boundless. "[C]riminal defendants do not have a constitutional right to discovery, absent a statute, rule of criminal procedure, or some other entitlement." *United States v. Palacios*, 677 F.3d 234, 246 (4th Cir. 2012) (quotation omitted); *see also Caro*, 597 F.3d at 619 ("There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." (quoting *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977))).

The Defendant does not have a constitutional right to notice regarding whether the Government used FISA surveillance in its investigation of him. He has no general constitutional right to discovery of the specific tools and techniques that the Government may have used in its investigation. *United States v. Muhtorov*, 20 F.4th 558, 630 (10th Cir. 2021) (holding that there is no "due process right to notice of specific techniques the government used to surveil the defendant in a foreign intelligence investigation, nor to evidence collected when the evidence is not grounded in a specific due process right, such as *Brady*"); *see also Al-Timini*, 2014 WL 12957760, at *4 (agreeing with "the government's position[] that defendant cannot compel disclosure of the extent and nature of the government's investigative tools or tactics" (quotation omitted)). And he has made no showing beyond pure speculation that the information sought falls into the specific categories of information to which he *is* entitled, such as, for example, *Brady* material or information covered by the Jencks Act. *See Caro*, 597 F.3d at 619 ("Because Caro can only speculate as to what the requested information might reveal, he cannot satisfy *Brady*'s requirement of showing that the requested evidence would be 'favorable to [the] accused.'" (alteration in original) (quoting *Brady*, 373 U.S. at 87)).

12

The Defendant relies heavily on the holdings of *Alderman v. United States*, 394 U.S. 165 (1969), and *United States v. Belfield*, 692 F.2d 141 (D.C. Cir. 1982), to argue that he has a due process right to litigate, in an adversarial proceeding, whether any information to be introduced at trial was "obtained or derived from" any surveillance the Government may have conducted under FISA. The Court is not convinced that either case helps him as much as he thinks it does.

In *Alderman*, the Supreme Court was confronted with a somewhat unusual circumstance in which, after the defendants had been convicted and those convictions had been affirmed on appeal, it was revealed that the government had unlawfully surveilled them. 394 U.S. at 167–68. The Court remanded to the district court for a determination regarding whether the unlawful surveillance resulted in a violation of the defendants' Fourth Amendment rights and, if so, whether the judgments of conviction were tainted as a matter of law because of those violations. *Id.* at 186–87. In prescribing the procedures that the district court should follow on remand, the Court rejected the Government's proposal to have the district court conduct an *in camera* review of the recorded conversations and to turn over only "arguably relevant" materials to the defendants. *Id.* at 181–82. The Court reasoned that "in our view the task is too complex, and the margin for error too great, to rely wholly on the in camera judgment of the trial court to identify those records which might have contributed to the Government's case." *Id.* at 182. Instead, the Court directed the district court to employ adversary proceedings that would give the defendants a full opportunity to litigate the questions of relevance and suppression as to all recorded conversations. *Id.* at 184.

The Defendant reads *Alderman* to generally require, as a matter of due process, the Government to give "notice of the specific techniques it used" whenever it is accused of illegal surveillance, so that there can be full adversarial proceedings on the question of the legality of the

13

surveillance and its relation to evidence to be introduced at trial. (*See* ECF No. 146 at 24–25.) The Court does not read *Alderman* so broadly. The Court understands *Alderman*'s core holding to be that, when the Government has conducted unlawful surveillance of a defendant, the defendant is entitled to adversarial proceedings to determine whether any of the fruits of that surveillance will be introduced at trial, and, if so, whether the fruits should be suppressed. Thus, whatever precisely *Alderman* requires, its dictates come into play in the FISA context only *after* a determination of unlawful surveillance has been made—a determination that has not been made in this case. *See* Kris & Wilson § 32:7 (explaining that Congress incorporated the *Alderman* requirements into FISA by requiring that, "*once a court has determined that the government unlawfully conducted the FISA search or surveillance,* it must not only suppress the evidence directly obtained through FISA, it must also provide the defendant with all of that evidence so that the defendant can determine whether other evidence that the government seeks to use against him was the fruit the unlawful wiretap (or search)" (emphasis added)). Here, however, other than the Defendant's bare assertion that surveillance of him was unlawful, he has provided no evidence whatsoever—beyond speculation—that he was surveilled, let alone that any such surveillance was unlawful. Because there has been no finding of illegal surveillance in this case, *Alderman*'s requirements for adversarial proceedings on the question of whether the illegal surveillance taints evidence to be adduced at trial have not been triggered.

*Belfield*—which, in any event, is not binding authority on the Court—is even less helpful to the Defendant. In that case, the Government disclosed prior to trial that the defendants were overheard in the course of FISA-authorized surveillance of another target. 692 F.2d at 143. The Government filed a petition for judicial determination of legality pursuant to 50 U.S.C. § 1806(f). *Id.* at 143–44. The district court held an *in camera* and *ex parte* hearing and ruled that the

14

electronic surveillance was lawful. *Id.* at 144. The defendants were subsequently convicted. *Id.* at 143. On appeal, the defendants argued that the district court should have permitted them to participate in an adversary proceeding on the question of the legality of the FISA surveillance and that the court should have permitted disclosure of the Government's *ex parte* submission. *Id.* at 144. In affirming the district court's judgment, the D.C. Circuit first held that, as a statutory matter, "[t]he language of section 1806(f) clearly anticipates that an *ex parte*, *in camera* determination is to be the rule." *Id.* at 147. The court went on to hold that FISA's provisions were constitutionally adequate, because FISA expressed Congress's "thoroughly reasonable attempt to balance the competing concerns of individual privacy and foreign intelligence," in part through "oversight of electronic surveillance . . . by all three branches of government." *Id.* at 424.

The Defendant seizes on a single sentence in *Belfield* in which the court stated that "even when the Government has purported not to be offering any evidence obtained or derived from the electronic surveillance, a criminal defendant may claim that he has been the victim of an illegal surveillance and seek discovery of the logs of the overhears to ensure that no fruits thereof are being used against him." 692 F.2d at 146 (citing *Alderman*, 394 U.S. at 89). But the Defendant neglects the very next sentence, in which the court notes that "[i]n either event, the Government may forestall the defendant's suppression or discovery motions by filing a petition with the United States District Court in the area where the criminal trial is taking place asking for a determination of the legality of the surveillance." *Id.* And, as explained above, the *Belfield* court held that this determination of legality could lawfully be conducted on an *ex parte* and *in camera* basis. Thus, contrary to the Defendant's assertions, *Belfield* does not guarantee to a criminal defendant "notice and disclosure of FISA surveillance" in every instance. (ECF No. 146 at 20.) Instead, *Belfield* expressly approves a process whereby even when there is FISA-authorized surveillance of the

defendant (a fact that has *not* been found by the Court in this case), a court may determine on an *ex parte* and *in camera* basis the legality of that surveillance.

The Defendant may be correct that the question of whether evidence was "derived from" FISA surveillance for the purpose of 50 U.S.C. §1806(c) is analytically distinct from the question of whether evidence at trial should be suppressed under the exclusionary rule. (*See* ECF No. 146 at 29.) But even if the Court agreed with the Defendant that the Government intended to introduce evidence "derived from" FISA surveillance, the substantive result in this case would be no different. Under 50 U.S.C. § 1806(f), when the Government provides notice under § 1806(c), or when the Defendant files a motion to suppress under § 1806(e), the district court ordinarily conducts an *in camera* and *ex parte* review of the materials "to determine whether the surveillance of the aggrieved person was lawfully authorized and conducted." Further, "[i]f the court determines that the surveillance was lawfully authorized and conducted, it shall deny the motion of the aggrieved person except to the extent that due process requires discovery or disclosure." *Id.* § 1806(g). Thus, *even if* the Government conducted FISA surveillance of the Defendant, and *even if* the Defendant were able to convince the Court, after an adversarial proceeding, that evidence at trial would be obtained or derived from such information, the next step would be an *in camera, ex parte* review of the evidence by the Court under 50 U.S.C. § 1806(f)—in other words, a process substantially similar to the *in camera, ex parte* Conference that *already happened* in this case on July 23, 2024. And, on the basis of that Conference, the Court has already expressly held that "there is no basis on which to believe or suspect that the rights of Defendant have been violated in any way with respect to any government activities authorized by FISA." (ECF No. 143 at 3.) There is no reason to revisit that conclusion now.

Finally, to the extent that the Defendant can be understood to argue that FISA's *in camera,*

16

*ex parte* review procedures are themselves unconstitutional, such an argument is unavailing. The Fourth Circuit has expressly held that FISA's review provisions are constitutional. *United States v. Dhirane*, 896 F.3d 295, 300 (4th Cir. 2018) (holding that FISA's *in camera* and *ex parte* review procedures "strike a reasonable balance between the competing interests in protecting individuals' constitutional guarantees and in protecting matters involving national security," and joining in the conclusion of "every federal court to have considered the constitutionality of these procedures" that "FISA reached a reasonable and therefore constitutional balance of competing interests"); *see also United States v. Elshinawy*, Crim. No. ELH-16-0009, 2017 WL 1048210, at \*9 (D. Md. Mar. 20, 2017) ("I am satisfied that the in camera, ex parte review process contemplated by FISA accords with due process under the Constitution").

For these reasons, the Court holds that the Defendant has no due process right to an adversarial proceeding on the question of whether any FISA-obtained or -derived evidence will be used against him at trial.

## VI.    Request to Unseal

Finally, the Court turns to the Defendant's request to unseal portions of the Government's *ex parte* submissions and the Court's *ex parte* Report. (*See* ECF No. 146 at 34–37.)  The Defendant objects that the Government had not formally moved to seal these documents under the District of Maryland's Local Rules.  The Defendant also objects that the Government has not invoked the provisions of the Classified Information Procedures Act, 18 U.S.C. app. 3 ("CIPA"), in this case.

These requests will be denied.  Defense counsel stated at the June 27, 2024, hearing that the Defendant "has no objection to an *ex parte* discussion about whether § 702 was used[] or

whether any of Mr. Russell's communications have been acquired pursuant to § 702."[5]  (ECF No. 138 at 46.)  The Court went on to explain at the hearing that it planned to meet with Government counsel in a Sensitive Compartmented Information Facility ("SCIF") and that it may generate a classified record of that meeting.  (*See* ECF No. 138 at 49–50.)  The Defendant did not object to this procedure at the hearing.  While the Court is not free in this unclassified ruling to detail the materials it reviewed and the findings it reached on the classified record—and the Court does not do so here—the Court bound itself not to go beyond the narrow set of factual questions with respect to which the Defendant stated that he had "no objection to an *ex parte* discussion."  When the Court sets restrictions on itself, it operates within them.  Thus, to the extent that the sealing process was not consistent with the Local Rules or with CIPA, the Defendant will not be heard to make those arguments now because he consented to the process that the Court employed.[6]

## VII.  Conclusion

For the foregoing reasons, a separate Order will issue denying the Defendant's Motion to Compel (ECF No. 146).

DATED this **17** day of October, 2024.

BY THE COURT:

James K. Bredar
United States District Judge

---

[5] The Court agrees with the Defendant that the Defendant did not consent to the *ex parte* resolution of legal issues.  (*See* ECF No. 146 at 35.)

[6] In any event, the Local Rules permit the Court to suspend the provisions of any Rule for good cause. Local Rule 604 (D. Md. 2023).  The Court finds that suspension of the Local Rules governing sealing is appropriate here given the classified nature of certain records, and given that the Defendant agreed to the process employed by the Court.